# WINEBRENNER v. FORNEY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 409.   Argued March 6, 1903.—Decided April 6, 1903.

Where there is a seeming contradiction between two clauses in a proclamation opening lands for settlement, the first clause being a special description of a strip of land, and the second being found in a portion of the proclamation defining the purposes for which the strip is made, the first clause is entitled to preference.

The strip of land referred to in the President's proclamation of August 19, 1893, " one hundred feet in width around and immediately within the outer boundaries of the entire tract of country to be opened to settlement," ran around and immediately within the outer boundaries of the body of lands opened for settlement, and not around the outer boundaries of the entire tract specified in the cession and relinquishment of the Cherokee Indians.

THE appellee holds the government patent to the southwest quarter of section 19, township 26 north, range 1 east, of the Indian meridian in Kay County, Oklahoma Territory.   The appellant claimed an equitable right to the land and brought this suit to have the defendant declared a trustee of the title for his benefit.   A demurrer to a second amended petition was sustained by the trial court and a decree entered dismissing the suit.   This decree was affirmed by the Supreme Court of the Territory, 11 Oklahoma, 565, and from that decision this appeal was taken.   The tract is within that portion of the Cherokee Outlet opened to settlement by the President's proclamation of August 19, 1893, and the only question as agreed by counsel on both sides, is whether appellee was disqualified by reason of being within prohibited limits on September 16, 1893, the day on which by the President's proclamation the land was opened for settlement.

*Mr. S. H. Harris* for appellant.   *Mr. J. J. Darlington* was with him on the brief.

*Mr. A. G. C. Bierer* for appellee.   *Mr. Frank Dale* was with him on the brief.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

The President's proclamation, after reciting that the Cherokee Nation of Indians had "ceded, conveyed, transferred, relinquished and surrendered all its title, claim and interest of every kind and character in and to that part of the Indian Territory bounded on the west by the one hundredth degree (100°) of west longitude; on the north by the State of Kansas; on the east by the ninety-sixth degree (96°) of west longitude; and on the south by the Creek Nation, the Territory of Oklahoma and the Cheyenne and Arapahoe reservation created or defined by executive order dated August tenth, eighteen hundred and sixty-nine;" and also that Congress had passed an act authorizing the President of the United States to open to settlement any or all lands included in such cession not allotted or reserved, declared that on September 16, 1893, the lands so acquired would be open to settlement, saving and excepting certain specified tracts and portions, including in the latter the Osage, the Kansas, the Ponca, the Otoe and Missouri reservations. The diagram on the following page shows in a general way the land first above described as ceded and relinquished by the Cherokee Indians, the land opened to settlement, and the excepted reservations. The proclamation declared that the land should be opened to settlement "under the terms of and subject to all the conditions, limitations, reservations, and restrictions contained in said agreements, the statutes above specified, the laws of the United States applicable thereto and the conditions prescribed by this proclamation." The act of 1893, 27 Stat. 640, 643, which is one of the statutes referred to, contained this provision:

"No person shall be permitted to occupy or enter upon any of the lands herein referred to, except in the manner prescribed by the proclamation of the President opening the same to settlement; and any person otherwise occupying or entering upon any of said lands shall forfeit all right to acquire any of said lands. The Secretary of the Interior shall, under the direction of the President, prescribe rules and regulations, not inconsistent with this act, for the occupation and settlement of

said lands, to be incorporated in the proclamation of the President, which shall be issued at least twenty days before the time fixed for the opening of said lands."

And in the President's proclamation it was declared:

" Said lands so to be opened as herein proclaimed, shall be entered upon and occupied only in the manner and under the provisions following, to wit :

" A strip of land, one hundred feet in width, around and immediately within the outer boundaries of the entire tract of country, to be opened to settlement under this proclamation, is hereby temporarily set apart for the following purposes and uses, viz. :

" Said strip, the inner boundary of which shall be one hundred feet from the exterior boundary of the country known as the Cherokee Outlet, shall be opened to occupancy in advance of the day and hour named for the opening of said country, by persons expecting and intending to make settlement pursuant to this proclamation. Such occupancy shall not be regarded as trespass, or in violation of this proclamation, or of the law under which it is made; nor shall any settlement rights be gained thereby."

The defendant was on the day named, September 16, 1893, within the limits of the Ponca reservation, and from such reservation went into the territory, opened the settlement, and made his homestead entry.

The contention of the plaintiff is that the strip is to be taken as extending around the outer boundaries of the entire tract specified in the cession and relinquishment of the Cherokee Indians, while the contention of the defendant is that it is to be considered as simply around the outer boundaries of the tract opened to settlement. If the contention of the plaintiff is correct the strip on the north, west and south would be immediately contiguous to the land opened to settlement, while on the east it would be a distance of many miles therefrom. If the contention of the defendant is correct it would on all sides be contiguous to such land. There is a manifest equity in the latter contention, especially when we consider the great multitude (according to reports 100,000 and over) who at the

appointed time surrounded this tract with a view of entering the same and obtaining homesteads. And such we think is the true construction of the proclamation. The strip is described as " around and immediately within the outer boundaries of the entire tract of country, to be opened to settlement under this proclamation." If this were all there would be no doubt. The doubt arises from subsequent words, " said strip, the inner boundary of which shall be 100 feet from the exterior boundary of the country known as the Cherokee Outlet." It is contended that what was known as the Cherokee Outlet extended from the ninety-sixth to the one hundredth degree of longitude and included the three or four Indian reservations east of the tract opened to settlement. Undoubtedly this entire tract was originally the Cherokee Outlet. *Cherokee Nation* v. *Journeycake*, 155 U. S. 196, 206, and treaties cited. It was originally set apart for the use of the Cherokees as a sort of appurtenance to the 7,000,000 acres specifically granted as their reservation. Subsequently, by various treaties, portions of it were withdrawn from the Cherokees' possession and set apart as reservations for the various tribes named. Still the entire territory was commonly known as the Cherokee Outlet, and was referred to as such in the act of 1893, which ratified the settlement and relinquishment by the Cherokees and authorized the opening to settlement of such portions of the land so ceded and relinquished as the President should determine. There is thus a seeming contradiction between the two clauses of the proclamation. But the first is used in special description of the strip, while the second clause is found in that portion of the proclamation which defines the purposes for which the strip is to be used. As between the two clauses, therefore, the first is entitled to preference, as at that time the attention of the writer must be supposed to have been directed to the location of the strip. But there are other reasons which make more clear the true construction. In addition to the equity referred to heretofore these matters may be noticed: If the strip was within the tract to be opened to settlement it was public land, and the President might well set that apart for temporary occupancy by those who were designing to go into

the body of lands to be opened to settlement, whereas if the contention of the plaintiff is correct the President would be setting apart a strip 100 feet in width through lands reserved to certain Indian tribes and allowing a temporary occupancy thereof.   We do not mean to deny the power of the President, but it is more reasonable to suppose that he was setting apart a strip of the public domain than a strip of Indian reservations for such temporary occupancy. · Further, the last sentence in the paragraph from which the second clause is taken says that the occupancy of the strip " shall not be regarded as trespass, or in violation of this proclamation, or of the law under which it is made ; nor shall any settlement rights be gained thereby " —language which is apt if it described a portion of the larger body of the public domain to be opened to settlement and not apt if it referred to a portion of Indian reservations.   The significance of the description " around and immediately within the outer boundaries of the entire tract of country, to be opened to settlement," is found in the purpose to prevent any one from being upon a railroad right of way running through the tract or upon any of the separate quarter sections or sections reserved by the proclamation for school and county purposes within the limits of the entire body. · *Smith* v. *Townsend,* 148 U. S. 490 ; *Payne* v. *Robertson,* 169 U. S. 323.

Our conclusions, therefore, are that the contention of the defendant is correct, and that the strip was one which ran around and immediately within the outer boundaries of the entire body of lands opened to settlement.

Such conclusion is in accord with the rulings of the Land Department.   It is true that at or about the time of the opening of the land to settlement. there were one or two contradictory orders and dispatches sent out from that department, but these were simply responses to requests for information and made without any hearing from parties interested adversely, and it is also true that in the subsequent consideration of the question there were some differences of opinion between successive Secretaries of the Interior, but the final conclusions were in harmony with the views we have expressed. *Cagle* v. *Mendenhall,* 20 L. D. 446 ; 26 L. D. 177 ; *Welch* v. *Butler,* 21

L. D. 369; *Brady* v. *Williams*, 23 L. D. 533 ; 25 L. D. 55 ; 25 L. D. 402.

The judgment of the Supreme Court of Oklahama is

*Affirmed.*

Mr. Justice White and Mr. Justice Peckham dissented.