### BOARD OF COM'RS OF OKLAHOMA COUNTY v. RYAN, County Treas., et al.

No. 15160—Opinion Filed Dec. 2, 1924.

Rehearing Denied Jan. 5, 1925.

(Syllabus.)

**1. Taxation—Foreign Corporations—Case Followed.**

Syllabus 1, 2, 3, and 8 in the case of In re Indian Territory Illuminating Co., 43 Okla. 307, 142 Pac. 997, are adopted by reference.

**2. Same—Legislative Power.**

Property in all its forms is a creature of law. In the instant case it exists in divisible elements which are represented by evidence of an interest in the property itself. The classification of such elements of value for purposes of taxation lies with the Legislature of the state. The attempt of the Legislature to exercise its authority in this regard meets with no interference from the courts, unless an invidious and unreasonable distinction is made with reference to the things made taxable.

**3. Same — Property Subject—Stock of Foreign Corporation Owned by Resident—Construction of Statute.**

Section 9583, Comp. Stat. 1921, is a legislative declaration of what shall be included as personal property subject to taxation. Within this section is included: "6. All shares of foreign corporations owned by residents of this state." Section 9599 requires that each resident of this state shall list with the assessor, among other items of property, shares of stock of joint stock, or other companies or corporations, when the property of such company or corporation is not assessed in this state. Held:

(a) That said provisions of these sections must be construed together, so as to arrive at the legislative intent relative to subjecting shares of stock owned by residents of this state in a foreign corporation to taxation.

(b) That the provisions of the listing section (9599) modify the general provisions of the prior section (9583) so as to take out of the inclusion in the class of property mentioned in the applicable provision of the latter section, shares of stock in a foreign corporation, when the property of such corporation is assessed in this state.

(c) That the words "the property," as used in the listing statute, mean such property as subject to taxation under section 9606, Comp. Stat. 1921, and the other provisions of the law governing assessment of the properties of corporations, excepted from said section 9606.

**4. Same — Nonliability of Shareholder Where Property of Corporation is Assessed in State.**

The Iten Biscuit Company is a corporation organized under the laws of the state of Nebraska, with an authorized capital of $10,000,000, more than half of which is paid up. The intervener, E. H. Seither, is a resident of Oklahoma City, Oklahoma county, Okla., and was in 1919-20-21-22-23. He was the owner of more than 400 shares of the capital stock of said corporation. Said corporation had long theretofore become the owner of property in this state of the taxable value of $250,000, or approximately 5 per cent. of its paid up capital, on which property it paid taxes each year, and was carrying on its business in the state of Oklahoma in good faith. Held, that the shares of stock owned by intervener Seither in said corporation are not subject to taxation by the laws of this state.

Held, further, that this construction of the statutes involved herein does no violence to either sections 5 or 8, of article 10, or section 50 of article 5, of the Constitution.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Mandamus by the Board of Commissioners of Oklahoma County against Martin S. Ryan, county treasurer; E. H. Seither, intervener. Judgment for defendants, and plaintiff brings error. Affirmed.

J. K. Wright and John Howard Payne (R. W. Stoutz, Rainey & Flynn, and McPherren & Wilson, of counsel), for plaintiff in error.

Wilson, Tomerlin & Threlkeld and Shirk, Danner & Fowler (Harris, Spielman, Thomas

& Harris. Cottingham, McInnis & Green, Bond, Melton & Melton, and Hayes McCoy, of counsel), for defendants in error.

W. P. Z. German and R. H. Hudson, amici curiae.

BRANSON, J. The board of county commissioners of Oklahoma county, as plaintiff, sought herein a mandamus against Martin S. Ryan, as county treasurer of Oklahoma county, and E. H. Seither, a stockholder in the Iten Biscuit Company, as intervener, defendants. The judgment of the district court was in favor of the defendants. The plaintiff appeals.

Under the statute, the board of county commissioners has the power to employ by contract a tax ferret, whose compensation is a percentage of the tax collected on property omitted from the tax rolls which should have been listed and assessed. On the discovery of property not listed, the ferret notifies the county treasurer of the nature and character of the property, whereupon it becomes the duty of the county treasurer to cause a notice to be issued to the owner of such omitted property, to show cause on a certain date why such property should not be placed on the tax roll for the years indicated in the notice.

Upon the hearing had, if the county treasurer finds that the property in question was subject to taxation, it becomes the duty of the county treasurer to place the same on the tax rolls. From his action in doing so, the taxpayer has the right to appeal.

The board of county commissioners, which is the statutory name by which the county sues, and is sued, employed one Woodson as tax ferret of said county. Said tax ferret reported to the county treasurer that one E. H. Seither owned stock in the Iten Biscuit Company, of the value of $5,000 in 1919, $8,000 in the year 1920, $10,500 for the year 1921, and $15,000 for the year 1922, $16,000 for 1923, and that said stock had not been listed for either of said years for taxation, and that the said Seither was a resident and citizen of Oklahoma City, Oklahoma county, Okla., and that his said stock to the values set out was subject to taxation for the years mentioned in said city, county, and state, and requested the said Ryan, county treasurer aforesaid, to give the notice required by statute to the said Seither, to show cause why said property should not be placed on the tax rolls for said years and a tax levied against the same for state, county, municipal, and school district purposes, aggregating for the years mentioned approximately $2,500. The coun-

ty treasurer, taking the position that the stock in question was not subject to taxation, refused to give the notice, or to list the stock, or to assess the same for taxes, whereupon this action was instituted by the county attorney. In support of its application for said writ, the plaintiff pleads that the Iten Biscuit Company is a foreign corporation, organized under the laws of the state of Nebraska, with an authorized capital stock of $10,000,000, more than half of which is paid up, and that it owns and possesses a large amount of property, valued at more than $5,000,000, as disclosed by its report, filed with the Corporation Commission of this state, in 1923, most of which property is outside of the state of Oklahoma, but that the said Iten Biscuit Company has located within this state property of the value of $250,000, on which said company has paid the state, county, municipal, and school district taxes where located. That said amount represents approximately 5 per cent. of the paid up capital, wealth, and property of said corporation. That the said stockholder Seither had owned stock to the value, and during the years set out above, and that the same was subject to taxation in Oklahoma City, and that the same had not been assessed by the county assessor, nor otherwise placed upon the tax rolls, but that the same had wholly escaped taxation, and that by reason of the county treasurer's failing to perform his duty necessary to list said property upon the tax rolls of said county, great damage was done the state, the county, the city, and the school district within which the said taxpayer lives, and for which there is no adequate remedy, save and except that mandamus be directed against said treasurer, compelling him to perform the duty imposed by law upon him as such officer.

Attached to the petition is the report of said foreign corporation required by the statute of this state to be filed each year with the Corporation Commission. The exhibits further disclose that the said corporation paid its franchise tax required under the statute on that portion of its capital stock employed in Oklahoma, as a condition precedent to its domestication and freedom to carry on its business in this state. That it has paid its license tax each year thereafter, has paid its state, county, municipal, and school district taxes upon all of its property, in amount approximately $250,000, located in Oklahoma.

On being presented to the trial judge, it was stipulated between the parties that the facts substantially set out above were cor-

rect, and that the only question presented to the court for determination was the question of law as to whether, under the facts stated, the shares of stock owned by the said Seither were subject to be assessed in his name for taxation. The trial court denied the writ, which was tantamount to a finding that the shares of stock were not subject to taxation for the years mentioned, and the only question before us is the correctness of the determination of the trial court as to this question of law.

This case turns upon the construction of certain sections of the Oklahoma statute on Revenue and Taxation, and as to whether or not these sections are within the constitutional power of the Legislature on the subject of taxation. We will quote the sections, and hereafter when necessary to refer to either, reference will be made by number.

Section 9574, Comp. Stat. 1921, provides:

"All property in this state, whether real or personal, including the property of corporations, banks and bankers, except such as is exempt, shall be subject to taxation; provided, that no farm products while remaining in the raw state, such as cotton, corn, wheat, oats, and the like, shall be subject to ad valorem tax, but be subject to the income tax laws of the state."

Section 9583, Comp. Stat. 1921, provides:

"Personal property, for the purpose of taxation, shall be construed to include: (among numerous other descriptions)

"Sixth. All shares in foreign corporations, owned by residents of this state."

Section 9582, Comp. Stat. 1921, provides:

"Real property for the purpose of taxation shall be construed to mean the land itself, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries and trees on or under the same."

Section 9599, Comp. Stat. 1921, in so far as material here, provides:

"Personal property shall be listed in the manner following:

"First. Every person of full age and sound mind, being a resident of the state, shall list all of his moneys, credits, bonds, shares of stock or joint stock of other companies or corporations (when the property of such company or corporation is not assessed in this state) moneys loaned or invested annuities, franchises, royalties and other personal properties."

Section 9606, Comp. Stat. 1921, provides:

"All corporations organized, existing or doing business in this state, for profit, other than public service corporations assessed by the state board of equalization, and other than national banks, state banks, and trust companies, shall be assessed upon the value of their moneyed capital, surplus and undivided profits, as the same existed on the first day of January of each year, in the county, town, district, or city where such corporation is located, less the assessed valuation of any real estate located in this state owned by such corporation and listed separately in the name of such corporation. 'Moneyed Capital,' as used in this section, shall include money actually invested in the business of such corporation, whether represented by certificates of stock, debentures, or bonds."

Section 9614, Comp. Stat. 1921, provides:

"On or before the first day of January of each year, the state board of equalization shall provide for the use of the assessors suitable notices and blank forms for the listing and assessment of all property and such instructions as shall be needful to secure full and uniform assessments and returns, and forward the same to the county clerks of the several counties of the state. The list of taxable property assessed to each person shall contain: (among other items)

"Twenty-fourth. The amount of shares of capital stock or bonds of companies and associations not incorporated under the laws of this state. * * * The above list may be extended at the discretion of the state board of equalization or board of county commissioners, so as to obtain such facts as they may deem advisable."

These sections above quoted, although cited in the Compiled Statutes 1921, were in full force and effect during all the years here in question, and for many years prior thereto.

The argument contained in the brief of the plaintiff is grouped around the propositions: That said sections 9574 and 9614 require the taxation of the certificates of stock owned by residents of this state in all foreign corporations; that said section 9599 refers only to domestic corporations, and has no reference to foreign corporations, but, if said section 9599 should be held to refer to all corporations, whether domestic or foreign, that the words "the property" in the clause, "when the property of such company or corporation is not assessed in this state,' means all the property, and not part of the property merely, owned by the corporation. In connection with these contentions, it is insisted that any other construction is violative of sections 5 and 8 of article 10, and section 50 of article 5, of the Constitution of Oklahoma. These sections provide:

(Section 5). "The power of taxation shall never be surrendered. suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

(Section 8). "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values, or subjects, for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."

Section 50, art. 5, provides:

"The Legislature shall pass no law exempting any property within this state from taxation, except as otherwise provided in this Constitution."

These quotations disclose that Oklahoma has no novel system of laws governing ad valorem taxation. The constitutional provisions of this state on the subject are found substantially in many of the older states, and it might well be said that this state adopted the provisions after they had been interpreted with relation to statutory enactments, if not in language, in meaning and effect the same as our own. There is no one provision of the statute that effectuates taxation, but statutory provisions on the subject may be fairly said to construe a system or a code of laws within themselves. Speaking generally, and as to those provisions having for their purpose ad valorem taxation solely, we have requirements that property, both real and personal, shall be listed by the county assessor, together with his valuation thereof. Such list is the assessment roll, or the tax roll in its inchoate form. Such roll, when complete, is submitted to the county equalization board, where the taxpayer and the county has the right to be heard as to the equalization of values. The statutes governing the fixing of the rate for each municipality and making the levy operate upon this roll. When the levy is made and extended by the proper officers upon the books, the statute then fixes the date when the amount shall become due and when delinquent. If not paid voluntarily, then the various statutes governing the enforced collection are set in motion, the ultimate end and object being to exact contribution from property owners to run the numerous forms of governmental agencies known to our system, to enforce the laws touching the safety of the people themselves, their health, morals and property rights. Not an exception to other states or governments, nor has Oklahoma been able to devise such a system as can be said to fix the burden fairly and equitably as to all the forms of private property subject to ownership recognized by law. Its legislative branch has tried to do this, however, and its success or failure in that regard is commended or deprecated largely as personal interest is thrown into the equation. The court shall refuse to follow the lead of some of the arguments made herein, to speculate how the Legislature should have made the statutes read. We shall not felicitate with counsel for plaintiff that the holding of the trial court fastens onto the tax law inequitable discrimination in favor of the holder of stock in a foreign corporation situated as the one the taxation of whose stock is involved here. We must refrain from writing anything into the law, or writing anything out of it. Comp. Stat. 1921, chapter 84, deals with revenue and taxation. In article 1 of said chapter, among other sections, we have said sections 9574 9582, and 9583.

Section 9582, supra, undertakes to define what estates shall be classed real estate under the revenue act.

Section 9583 sets out what personal property shall be construed to include as referred to in the revenue law. The legislative declaration in said section 9574 is what is "subject" to taxation. The mere declaration that an element or form of property or wealth is **subject** to taxation and being taxed in all the elements to which it might be subjected are separate and distinct. It is required to be listed with the assessor on the assessment roll to set in motion the various provisions of the statute governing the **subjection** of such property to the actual payment of a tax. Said section 9583, as will be seen, designates the shares in foreign corporations owned by residents of this state as being a subject of taxation, and for such is personal property. Article 3 of chapter 84 sets in motion the machinery of the taxing process. It contains the assessing and listing provisions.

The said provision of said section 9583 was a reference in general terms to all foreign corporations, and made no distinction between those domesticated in Oklahoma, and owning property here, and those not domesticated. However, in said article and in section 9599 thereof we find that the owner of shares of stock in a foreign corporation shall list the same for taxation when "the property" of such company or corporation is not assessed in this state. Under the familiar rule, these statutes must be construed together. In corporations there are

usually to be found five elements of taxable value, each of which may under some circumstances be a proper subject of taxation. These elements are usually classified as, first. franchises; second, capital stock in the hands of a corporation; third, corporate property; fourth, income; fifth, shares of the capital stock in the hands of the individual shareholders. The different elements represent, however, to a greater or less degree the same basic constituents of the corporate assets. The elements themselves, being distinct, may be · severally taxed, although the burden falls upon the same property in each case. We take it, it is not subject to debate that the property of shareholders in their shares, and the property of the corporation in its capital stock or other forms of property in which its capital stock has been invested, are separate and distinct, and where the Legislature has clearly intended to make them so, both may be subjected to taxation.

That statutes will not be construed to authorize both the property of the corporation and the shares of the individual stockholder to be taxed, unless the intent of the Legislature to that effect is plainly and unequivocally stated is well settled, 26 Ruling Case Law, 158; Tennessee v. Whitworth (U. S.) 29 L. Ed. 830; Farrington v. Tennessee (U. S.) 24 L. Ed. 558. The taxation of its property, and at the same time taxing its shares, is a harsh exercise of legislative power, and is not to be presumed. 59 L. R. A. 594. There is no direct inhibition in the Constitution against the Legislature imposing taxes in such a manner as to amount to subjecting property to double taxation. Subject only to constitutional provisions, the Legislature selects the subjects of taxation. The property, wealth, or possessions of a corporation usually have tangible form, but the ownership of an interest therein by individuals is usually intangible, the evidence of which is called shares of stock. The tangible property of the corporation and the shares of stock owned by the individuals may each be subjected by the Legislature to taxation, or the Legislature may require the assessment of the shares of stock belonging to the stockholder "in lieu" of the tangible property owned by the corporation. The shares of stock are in reality the book or record evidence of the intangible interest in the tangible property of the corporation issuing them. When a statute imposing a tax is susceptible of two constructions, if the legislative intent is in doubt, the doubt should as a rule be resolved in favor of the taxpayer. Adams v. Construction Co., 35 Okla. 140, 130 Pac. 148.

Commenting upon elements such as are involved here, the Supreme Court of the United States, in the case of Tennessee v. Whitworth, supra, said:

"And it is no doubt within the power of the state, when not restrained by constitutional limitations, to assess taxes upon them in a way to subject the corporation or the stockholders to double taxation. Double taxation is, however, never to be presumed. Justice requires that the burdens of government shall · as far as practicable be laid equally upon all, and if property is taxed once in one way, it would ordinarily be wrong to tax it again in another way, when the burden of both taxes falls on the same person. Sometimes tax laws have that effect, but if they do, it is because the Legislature has unmistakably so enacted. All presumptions are against such an imposition." Commonwealth v. Walsh, Trustee (Ky.) 117 S. W. 398; Commonwealth v. Harris (Ky.) 118 S. W. 294; Commonwealth v. Fidelity Trust Co. (Ky.) 143 S. W. 1037; State v. Graybeal Co. (W. Va.) 55 S. E. 398; East Livermore v. Banking Co. (Me.) 69 Atl. 306; Commonwealth v. Fall Brook, etc., Co. (Pa.) 26 Atl. 1071; Lewiston W. & P. Co. v. Asotin County (Wash.) 64 Pac. 544; New Orleans v. Houston, 119 U. S. 265, 30 L. Ed. 411.; Stroh v. Detroit (Mich.) 90 N. W. 1029; First Natl. Bank v. Douglas County (Wis.) 102 N. W. 315; Security Co. v. Hartford (Conn.) 23 Atl. 699; Loring v. Beverly (Mass.) 110 N. E. 974; State v. Simmons (Miss.) 12 South. 477; Gas Co. v. Spaeth (Kan.) 109 Pac. 785.

The sections of the statute quoted supra are all parts of the same act of the Legislature. Construing said section 9583 and section 9599 together, it is clear that there is a different method of taxing stock in corporations organized in a sister state, not domesticated in Oklahoma, and corporations domesticated in Oklahoma, the property of which is assessed in this state. If the Iten Biscuit Company had not paid its franchise tax under the law of this state, and had not paid its tax upon property owned by it in this state, then the shares of stock in question would have undoubtedly been subject to taxation in the hands of the owner. On the other hand, we find that the facts as contained in the pleadings, which are admitted to be the true facts, show that the said corporation had paid its franchise tax, amounting to $918, had paid its license tax each year, had filed its annual reports with the Corporation Commission, had invested in the state of Oklahoma in property of the value of $250.000 on which it had paid county, municipal, and school district taxes. But plaintiff says, however, that said property was only approximately 5 per cent. of the total holdings of said corporation, and

under this condition contends that the first subdivision of section 9599 requires the listing and assessment of the stock held by the said Seither for the years mentioned, and the assessment of a tax thereon; the specific contention of the plaintiff being that the words, "the property" contained in the clause of said section which reads, "When the property of said company or corporation is not assessed in this state," means all the property owned by such foreign corporation. We think these words "the property" mean the property of the company or corporation which is subject to taxation in Oklahoma. To agree with this contention would write into the statute both language and meaning not there. Such taxes on domestic corporations and foreign corporations domesticated in this state are enforced alike.

Section 9606, supra, provides that such corporations as are doing business in this state shall be assessed upon the value of their moneyed capital surplus, and undivided profits, where the same is located, less the assessed valuation of any real estate located in this state, and that the moneyed capital referred to therein includes that actually invested in the business of such corporation, etc. Such property, of course, would be the only property belonging to such corporation as could be taxed under the ad valorem taxation statutes of the state.

In the case of In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 Pac. 997, this court said:

"Corporations incorporated under the laws of a sister state, doing business in this state, are taxable the same as domestic corporations."

While it might be argued that this declaration of the law from the facts involved in that case had reference only to the tangible property of the corporation, yet we think that it extends equally to stock in such corporations. There is no provision in the statutes of this state for taxing the shares of stock owned by the individual shareholder in a domestic corporation, unless it be this same section. The only section with reference thereto is the said section 9599. A domestic corporation might have part of its capital invested in property in Oklahoma and part invested in property in a foreign jurisdiction, and to give the statute the meaning contended for by the plaintiff would subject the shares of stock in a domestic corporation, even though practically all of its property might be located in Oklahoma, to taxation, if only a small part thereof were invested in a foreign jurisdiction.

In making the classification for tax purposes it seems that the Legislature deemed it more advantageous, evidently on grounds of certainty of securing taxes therefrom, to make the property of foreign corporations domesticated in this state taxable, in lieu of taxes the Legislature might assess upon its shares of stock. Whether by this election on the part of the Legislature, the state would in each case receive more or less revenue than it might otherwise depends entirely upon the facts.

In the instant case, however, we find that the Iten Biscuit Company pays on an ad valorem assessment of $250,000, pays its franchise tax, pays its license tax, etc., whereas its reports, which are made a part of the pleadings in this case, show that it has within Oklahoma only two stockholders, and that the total amount of stock owned by each is not valued at exceeding $20,000, If the Legislature had declared that the stock in the hands of the individual citizen was subject to taxation, and its capital stock to the amount invested in the state was not subject to taxation, the state would have been the loser by several thousand in the instant case, each year.

Much stress is laid by plaintiff on another section of the statute, to wit, section 9614, Comp. Stat. 1921. That this statute is in no sense intended by the Legislature to impose taxes is, as we think, definitely determined by this court in an opinon by Justice Kane in the case of Cameron v. Board of Equalization of Greer County, 87 Okla. 297, 210 Pac. 1025. In said opinion the court in effect said that the obvious purpose of the statute is to require every corporation, both foreign and domestic, to furnish the data set out in the section on a form prescribed by the State Auditor, in order that the taxing officers of the state may have ready access to information deemed helpful in assessing corporations, and this we think is the full scope and purpose of that section of the statute.

Plaintiff in its brief states in effect that the various statutes of the different states prescribe different methods of assessing corporations, and that whether or not shares of stock in a foreign corporation, such as involved here, are taxable, depends upon the language of the controlling statute of the state. Adverting to the holding of this court in the case of Indian Territory Illuminating Oil Co., supra, to the effect that foreign corporations which have domesticated

in this state are taxed the same as domestic corporations, we deem it expedient to add thereto that this is not only the fair import of the language, but it is the only reasonable construction. The nearest approach to our statute on this subject that we have been able to find, although there are many in effect the same, is section 1664 of Ballenger's Ann. Code of the State of Washington. Said section directs the manner of listing personal property, and requires that every resident of that state shall list all of his property, including bonds or stocks and shares of stock of joint stock or other companies, when the property of such company is not assessed in the state.

The Supreme Court of the state of Washington, in the case of Ridpath v. Spokane County, 63 Pac. 261, was considering a corporation, part of whose property was invested outside of the state of Washington and part inside the state. The court in effect held that when corporate property is assessed in the state, whether the same be all the property of the corporation or merely a fractional part thereof, the stockholder is not required to list the shares owned by him for the purpose of taxation. That the court was considering a domestic corporation, we think makes no difference, for reasons given above.

In the case of State ex rel. Wisconsin Trust Co. v. Leuch, a similar statute was under consideration by the Supreme Court of Wisconsin. The clause under consideration provided, "Stock in any corporation in this state which is required to pay taxes upon its property in the same manner as individuals" is exempt from taxation. The contention was made in that case as in the present case that this statute had reference solely to domestic corporations. In commenting upon this the court said:

"How can we say that the intention was to limit the exemption only to domestic corporations? The statute says 'any corporation.' The distinction between foreign and domestic corporations is so obvious and the words commonly employed to express that distinction so familiar to all, that it would seem that if it were the intention of the Legislature to confine the act to domestic corporations, it would have employed these familiar terms. It is argued by appellant's counsel that a foreign corporation could not be 'in the state,' and therefore such corporation is not included."

Answering this contention, the court further said:

"It is an every day experience that for-

eign corporations come 'into this state' with the consent of and under the laws of this state, and are licensed to exercise their principal corporate powers here, and such exercise is upheld as a legal and sufficient exercise. * * * A foreign corporation having property and agents and carrying on business in this state is 'in the state' within the meaning of the statute classifying corporations for the purpose of exempting from taxation their shares of stock."

The other question involved in that case was what was meant by the words "its property," and the question there was raised that these words referred to all its property, whether located in that state or elsewhere. In regard to this, the court said in effect that this legislation was with reference to the affairs of the state and its own system and manner of taxation, and that "its property" meant the property of the corporation located in the state. The Oklahoma statute might have with equal force used the words "its property" instead of the words "the property" of such company or corporation. In both cases, we take it that the idea conveyed by the vehicle of the words used would have need been the same.

Under statutes similar in their effect, the conclusion we reach herein is well supported. Tennessee Fertilizer Co. v. McFall et al. (Tenn.) 163 S. W. 806; Dupuy v. Johns (Pa.) 104 Atl. 565; Commonwealth v. Fidelity Trust Co. (Ky.) 143 S. W. 1037; Commonwealth v. Walsh's Trustee (Ky.) 117 S. W. 398; Slater v. Commonwealth (Ky.) 179 S. W. 201.

We think there is no well-reasoned case to be found holding contrary to the views here expressed, under a statute to the same import as our own.

The next and last important contention made by the plaintiff is to the effect that this interpretation of the statute would run counter to the provisions of the Oklahoma Constitution, supra. Section 5 of article 10 is the potent section, and seems to have been adopted from Minnesota, where it is given a fixed meaning. Mutual Benefit Insurance Co. v. County (Minn.) 116 N. W. 572. The classification of property for assessment purposes, where uniformity and equality is imposed upon all property falling within the class, is a matter of legislative policy which can by said branch of the government be carried into effect without in any wise violating any of the provisions of the Constitution above set out. This is not only supported by the cases hereinabove cited, but is well settled

by numerous cases from this court: In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 Pac. 997; In re Gross Production Tax of Wolverine Oil Co., 53 Okla. 24, 154 Pac. 362; Trustees, etc., Ins. Corp. v. Hooton, 53 Okla. 530, 157 Pac. 293; In re Okla. Nat. Life Ins. Co., ·68 Okla. 219, 173 Pac. 376; Large Oil Co. v. Howard, 63 Okla. 143, 163 Pac. 537; In re Assessment First Nat. Bank of Chickasha, 58 Okla. 508, 160 Pac. 469; Board of Equalization v. First State Bank, 77 Okla. 291, 188 Pac. 115: Brown v. Hennessy State Bank, 78 Okla. 141, 189 Pac. 355; Board of Equalization v. Peoples Nat. Bank of Kingfisher, 79 Okla. 312, 193 Pac. 622; Longcor, Co. Treas.. v. Central State Bank of Enid, 85 Okla. 108, 204 Pac. 1099; Corbett, Co. Treas., v. Security State Bank, 85 Okla. 241, 204 Pac. 173; Sowers v. Bank of Perry, 89 Okla. 119, 213 Pac. 876; In re Assessment First Nat. Bank of Chickasha, 93 Okla. 233, 220 Pac. 909.

The judgment of the trial court is affirmed.

JOHNSON, MASON, LYDICK, and WARREN, JJ., concur. McNEILL, C. J., and GORDON, J., concur in conclusion. HARRISON, J., absent and not participating.

---

LYDICK, J. (concurring). The importance of our decision in this case as a precedent is so great that I feel justified in expressing at some length my personal reasons for concurring in the conclusion reached in the opinion of the court written by Mr. Justice Branson.

It is by the provisions of House Bill No. 168 of the Session Laws of 1909 and by no other law that there is made taxable in this state those shares of stock and those shares only which are issued by corporations (other than banking institutions) whose property is not assessed in this state. It applies equally to domestic and foreign corporations. The fifth subdivision of section 9583 alone is sufficient to make shares of domestic corporations taxable the same as are shares of foreign corporations without discrimination. See In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 Pac. 997; Commonwealth v. Fidelity Trust Co. (Ky.) 143 S. W. 1037; Commonwealth v. Harris (Ky.) 118 S. W. 294; Commonwealth v. Walsh's Trustee (Ky.) 117 S. W. 398.

The act is a comprehensive codification and revision of all the laws relating to the creation of revenue by ad valorem taxation.

The language in the various sections thereof relating to the making of property taxable is peculiarly indefinite and incomplete in many respects when each section is separately considered. (1) All separate parts of the act must be construed in pari materia, (2) assigning to each provision thereof some meaning and useful purpose, (3) with due regard for a long-established interpretation given the act by the executive and administrative departments of the state, (4) the whole bill must be so interpreted as to make it constitute, if possible, one harmonious act, and (5) to avoid double taxation unless it be clearly imposed. Supporting these rules in the order announced, see:

(1) R. C. L., vol. 25, pp. 1060-1062, sec. 285.

(2) Bohart v. Anderson, 24 Okla. 82, 103 Pac. 742; K. C. S. Ry. Co. v. Wallace, 38 Okla. 233, 132 Pac. 908; Board of Eq. v. First St. Bk., 77 Okla. 291, 188 Pac. 115.

(3) R. C. L., vol. 25, p. 1043; United States v. Moore, 95 U. S. 760, 24 L. Ed. 588; U. S. v. Johnston, 124 U. S. 236, 31 L. Ed. 389; Pennoyer v. McConnaughy, 140 U. S. 1, 35 L. Ed. 363; 25 R. C. L., pp. 1043-1045, sec. 274; Bloxham, Comptroller, v. Consumers' Electric Light & Street Railroad Co., 18 South. 444; Robert L. Winebrenner v. Edward C. Forney, 189 U. S. 148, 47 L. Ed. 754; MaHarry v. Eatman, 29 Okla. 46, 116 Pac. 935; Duff v. Keaton, 33 Okla. 92, 124 Pac. 291.

(4) Thacker v. Witt, 64 Okla. 169, 166 Pac. 713; Town of Comanche v. Ferguson, 67 Okla. 101, 169 Pac. 1075.

(5) 26 R. C. L. 158, sec. 129; State of Tennessee v. Geo. K. Whitworth, 29 L. Ed. 830, 117 U. S. —; Farrington v. Tennessee, 95 U. S. 679, 24 L. Ed. 558; 26 R. C. L., pp. 157-158, sec. 129; Commonwealth v. Walsh's Trustee, (Ky.) 117 S. W. 398; Commonwealth v. Harris (Ky.) 118 S. W. 294; Commonwealth v. Fidelity Trust Co. (Ky. App.) 143 S. W. 1037; Ridpath v. Spokane County, 23 Wash. 436, 63 Pac. 261; Whitaker v. Brooks (Ky.) 13 S. W. 355.

To reach this result we will construe language either literally or liberally as will best serve this purpose, but we will not hold language to mean that which it clearly denies. When language is easily capable of two different constructions, we will adopt that which promotes the general purpose of the act when the legislative intent is capable of ascertainment. It is sections 9574, 9583, 9599 and 9614, Comp. Stat. 1921,

being parts of this act, construed together in pari materia in accordance with the rules above announced, and not any one separate section of the act, that impose the burden of taxation upon such shares of stock in accordance with the legislative intent. The act thus construed as a whole does not in terms exempt certain classes of shares of stock from taxation. It merely thus burdens certain classes of shares and leaves the remaining shares go free by reason of its failure to affirmatively tax them. In so classifying the shares of stock into two separate classes, one of which the law-makers intended to burden and the other of which they intended should go free, the reason impelling the lawmakers to so act is clearly apparent. They desired that prop-erty in this state should neither' directly nor indirectly be burdened with double ad valorem taxation. To accomplish this end and at the same time tax those shares of stock which, on account of the failure of the corporation issuing them to pay any tax, would otherwise neither directly nor indi-rectly contribute any aid to the maintenance of our state government, it is provided in the act that there shall be taxed only those shares of stock which are issued by a cor-poration whose "property" "is not assessed in this state". Just what property of the corporation must escape taxation in order that we may in the language of the stat-ute say that its property "is not assessed in this state"? The tax ferret says we must so say unless all the property of the com-pany is located in the state and here as-sessed. The taxpayer says we cannot so say if the company has merely a small per cent. of its property located in this state and that small part has been duly assessed. If the tax ferret's theory be correct, the lawmakers in effect, though not in express terms, have divided this subject of taxation, to wit, shares of corporate stock, into two classes for taxation purposes, the first to be taxed and the second to go free. The first class, so the tax ferret says, consists of shares of stock in corporations which have a very small portion, or other portion less than all, of their property in another state, and the second class consists only of shares in corporations having absolutely all their property in this state. Under the tax-payer's theory, two classes have been made for purposes stated, but he in effect says the classification is as follows, to wit: The first class, to be taxed, consists, so the tax-payer says, only of shares of stock in corporations having none of their property in the state, and the second class, which goes free, con-sists of shares of stock in all corporations

having even a very small portion, or major portion, or all, of their property within the state and here assessed.

According to the tax ferret's theory, if A., being a resident of Oklahoma, owns all the shares of stock in a corporation which has one hundred per cent. of its property in this state and here assessed, he pays no tax upon the shares of stock. If B., likewise a resident of Oklahoma, owns sim-ilar shares in a similar corporation and it happens to invest even five per cent. of its capital in another state, he must pay full tax upon one hundred per cent. of the value of all the corporate stock issued by the company. Both corporations here pay ad valorem tax on practically all their property. The result is a ninety-five per cent double taxation on B.

According to the taxpayer's theory, if A., being a resident of Oklahoma, owns all the shares of stock in a corporation which has invested merely five per cent of its great capital in this state, he pays no tax what-ever on the corporate shares, although he owns them all. If B., likewise a resident of this state, owns similar shares in a sim-ilar corporation which has failed to have the meager five per cent. portion of its property located here and has none here, then he must pay full tax upon one hundred per cent. of the value of all the corporate stock issued by the company. The latter corporation has paid no ad valorem tax here and the former practically none. This results in just such an unjust discrimina-tion between A. and B. as tends to bring governments into disrepute. The choice be-tween such theories is merely a selection of the lesser of two great and unnecessary evils.

I think the statute is capable of only the two constructions suggested. Which shall it be? The language is capable of either. We turn to the underlying legislative pur-pose in making the classification.

"The corporation owns its capital stock. The shareholders own each their share of capital stock. Each is property. Yet, there is but one thing. When the thing itself is taxed at its full value, every element of it is made to bear the tax. The whole in-cludes all its parts. When the state lays a tax upon the whole, it has made each of its constituent parts contribute to the sup-port of the government." Commonwealth v. Walsh's Trustee (Ky.) 117 S. W. 398.

Neither this state nor any other state intends to tax, or does tax, "every right or interest in things which the law recognizes as property." See In re Indian Territory

Illuminating Oil Co., 43 Okla. 307, 142 Pac. 997. We have by special acts provided for the tax of shares of stock in banking corporations, but in order to avoid double taxation we do not tax to the corporation the property by it owned. If the classification and distinction should be permissible, we find no reasons to believe that our lawmakers intended to place a burden upon shares of stock in strictly private commercial corporations not borne by banking institutions, which enjoy special privileges given them by the state. Under the tax **ferret's** theory, this result would obtain where a corporation had nearly but not quite all of its property located and taxed in this state. The only conceivable purpose which the lawmakers could have had in separating shares of stock into classes distinguished by differences due to the location and local tax of the corporate properties is that they intended that the residents of this state should not be subjected to double taxation, hardly conscionable unless the same is mandatory to preserve the very existence of the commonwealth itself. The theory of the **taxpayer** here and as above outlined produces a result consistent with the legislative purpose. The theory of the tax **ferret** almost completely circumvents such purpose. It is true the **taxpayer's** theory produces an unjust and unwarranted discrimination between taxpayers but no more so than does the tax **ferret's** theory. Between these two almost unconscionable results we select the one most evidently in harmony with the clear legislative purpose and which will do the least amount of injustice to the fewest of our citizens. See Adams v. Board of Commissioners. Garvin County, 35 Okla. 440, 130 Pac. 148. I therefore am of the opinion that the shares of stock in a corporation are not taxable. if the act be constitutional, in event any substantial portion of the corporate property is in good faith. and not for the purpose of avoiding the tax upon its shares, located in the state and here duly assessed. See, State ex rel. Wisconsin Trust Co. v. Leuch, City Clerk (Wis.) 144 N. W. 290; Patterson v. Board of Commissioners of Wilson County et al. (Kan.) 109 Pac. 790; Tennessee Fertilizer Co. v. McFall (Tenn.) 163 S. W. 806; Dallas County v. Home Fire Ins. Co. (Ark.) 133 S. W. 1113; Dallas County v. Banks (Ark.) 113 S. W. 37; Stroh v. City of Detroit (Mich.) 90 N. W. 1029; Gillespie. Tax Collector, v. Gaston et al. (Tex.) 4 S. W. 248; Slater v. Commonwealth (Ky. App.) 179 S. W. 201.

This is the construction of the statute which has been followed by the executive and administrative officers of this state and the various subdivisions of its sovereignty during the long years which have elapsed since its enactment. Multiplied thousands of our citizens have invested their savings and their fortunes in good faith relying upon the correctness of this well-established and long-recognized interpretation of these laws. Clearly such an interpretation is not in conflict with the plain intent of the act and we should be most reluctant to overturn such a long-standing construction when we know that such great interests of our citizens will be disturbed, or even completely destroyed. if we now suddenly force upon the citizenship an interpretation so radically different as that here sought by the tax ferret. We must know that thousands of the citizens of our state, even ranking among the poorer classes of our people, have invested the savings from their earnings since statehood in shares of stock. Under the interpretation of this law as sought by the tax ferret, they would be liable for the payment of the tax during all the years elapsed since the law was enacted. In tax ferret proceedings they would be made to pay, and the tax for the years now gone by with accumulated interest would in a thousand instances completely confiscate every dollar of such an investment. If all such property could be located and thus made to pay, the state would be enriched by perhaps a hundred million dollars, which its needs do not justify it to procure in manner like this and of which fifteen or twenty millions would be paid to individual tax ferrets. Those who for years have owned such corporate stock would in addition to their tax hereafter annually accruing be required to pay such large sums in back taxes that all other citizens of the state could enjoy the privileges of the state and local government for years hereafter without excuse on the part of the state for tax upon them. Thousands of our good citizens, thus victimized, would possibly be pauperized, or nearly so, and their families likely made dependent. Our citizens would either have to abandon investments in corporate stock of corporations not having all their property located in the state or move their residence to a state which appreciated the importance of retaining wealth within its borders. The result would be irreparable damage to our great commonwealth. According to the history of the practical operation of tax ferret proceedings, little uniformity appears therein and the equal protection of the law usually fails to function there. We should endeavor to so interpret the laws of this state and of the nation as to furnish no justi-

fication for the statement quoted in the brief of the defendants in error from an eminent statesman of the nation who said:

"Those who do the day's work of the nation are so terrorized by tax gatherers and other government spies and inspectors that American character is being transformed from that of upstanding fearless citizens of a republic into that of furtive and hypocritical subjects of autocracy."

It is urged by the tax ferret that the interpretation which I have approved makes the statute unconstitutional in that it exempts from taxation certain property which under the Constitution he says the Legislature was without power to exempt. Even if it be said that the Constitution prohibits the exemption from taxation of property not exempted by the Constitution itself, it must also be said that the Constitution does not require the lawmakers to provide a system of double taxation. There is nothing in the state Constitution which could be properly construed to require the Legislature to place a tax upon shares of stock in a corporation when it had provided for the tax of the thing represented by the shares, to wit, the property owned by the corporation itself. The same contention can as well be made as to the theory advanced by the tax ferret. Even under his theory, shares of stock are exempted when the company has all of its corporate property within the state. It therefore appears that if the tax ferret is correct in his contention, the adoption of either theory would render this part of the act unconstitutional for the reasons urged by the tax ferret himself. The tax ferret says that section 9583 is the one that alone places the tax upon property. If that be true then, coupled with his theory that the provisions of section 9599 create an unconstitutional exemption, all shares of stock in all corporations are always fully taxable and a result is reached not only generally unjust but clearly contrary to the easily apparent intent of the lawmakers expressed in this act.

In my opinion, it is immaterial which interpretation of this statute we adopt, for these portions of the act, under either theory, clearly contravene article 10, section 5 of the state Constitution, which provides that "taxes shall be uniform upon the same class of subjects." The Legislature may classify subjects of taxation and divide them into numerous classes and provide for the taxation of the various classes according to entirely different methods. However, the Legislature is without power, under the Oklahoma Constitution, to take property naturally constituting but one subject of taxation and properly belonging to one class only and by an arbitrary and capricious classification founded upon no real and substantial distinctions provide a high tax upon the part coming within the terms of one such artificial classification and a most substantially lower tax, or none at all, upon the other. The Legislature is without power to assess all black horses for taxation at $100 per head and all white horses at $10 per head or to permit them to go free. There is no reason why all shares of stock should be made taxable at their full value in a corporation which has 95 per cent. of all its capital invested in Oklahoma and five per cent. invested in another state and at the same time entirely relieve shares of that burden if the corporation issuing them has one hundred per cent. of its capital invested in this state. There is no logic to support a theory that shares of stock in a corporation should go tax-free if the corporation has five per cent. of its capital invested in Oklahoma and 95 per cent. in another state, while the shares of stock be taxed at one hundred per cent. of their value in a similar corporation that fails to have five per cent. of its capital invested in this state. Such a classification merely toys at first with the subject of double taxation, but at last embraces it and at all times is so discriminating that it violates the mandate of the Constitution requiring that "taxes shall be uniform upon the same class of subjects," and creates distinctions and discriminations abhorrent to the basic principles of American government and traditions. A law which would make taxable shares of stock in a corporation only in the inverse ratio which the capital invested in this state bears to the entire capital of the corporation might or might not be subject to such a criticism and some of the states have enacted laws to that effect. The classifications of shares of corporate stock as made by this act are unnatural, are artificial and arbitrary, based on no reason, and are void under the Constitution. It is several different sections of the act taken together, and not any one separate section thereof, that impose the burden of taxation upon such shares of stock. The act does not in terms exempt certain classes of shares of stock from taxation. It merely thus burdens certain classes of shares and leaves the remaining shares go free by reason of its failure to affirmatively tax them. It therefore follows that it is not a mere exemption from taxation in the act which contravenes the organic law of the state, but it is the entire parts and portions thereof which

place the tax upon the class of shares specified. It is therefore my opinion that all that portion of the act referred to which undertakes to place an ad valorem tax upon any shares of capital stock is in conflict with the provisions of our state Constitution and is void. So I say because I do not find there merely an express exemption which I can say is void, thus leaving in force the part of the statute creating the tax. But were such the form of the statute, the result would be the same. When one part of a legislative act is held void, all portions of the act fail except those parts of which it can safely be said from an examination of the act that the Legislature would have enacted had it then known the part declared invalid would have been unenforceable. The contrary intention of the lawmakers is clearly apparent here as to the placing of tax upon shares of corporate stock.