## STONE v. BONAPARTE, Co. Treas.

No. 20321. Opinion Filed Dec. 9, 1930.

Rehearing Denied March 31, 1931.

Adelbert Brown, Gordon Stater, and E. G. DeParade, for plaintiff is error.

Geo. M. Callihan, Co. Atty., I. L. Harris, Asst. Co. Atty., M. W. McKenzie, City Atty., and A. L. Hull, Asst. City Atty., for defendant in error.

ANDREWS, J. There are two propositions involved in this appeal. The first involves a levy of 6.94 mills for the current expense fund of the city of Oklahoma City for the fiscal year commencing July 1, 1926, and the second a levy of .45 mill for a library fund for the same city for the same fiscal year. The trial court held those levies valid in all respects by virtue of certain elections wherein the voters authorized the increase over and above the statutory limitation on the maximum rate of levy for current expense purposes. An appeal was taken from that judgment by the protestant. The parties will be hereinafter referred to as protestant and protestee.

The record shows that the county excise board of Oklahoma county fixed the rates of levy for the city of Oklahoma City for the fiscal year commencing July 1, 1926, as follows:

| | |
|---|---|
| General fund current expense | 6.94 |
| Street repair | .47 |
| Library fund | .45 |
| Park fund | .90 |
| Sinking fund | 8.93 |
| Total levy | 17.69 |

It is admitted by the protestee that the rate of levy fixed for current expenses at 6.94 mills and the rate of levy fixed for the library fund at .45 mill, totaling 7.39 mills, being 1.39 mills in excess of the 6-mill limitation provided by section 9692, C. O. S. 1921, are, to the extent that the total thereof exceeds 6 mills, excessive and void unless that excess is valid by reason of the procedure followed in the fixing of the rates of levy.

The protestee contends that the levy of .45 mill for the library fund is valid by reason of the approval thereof by the qualified voters at an election held pursuant to chapter 61, S. L. 1923-24.

In the case of Grubb v. Smiley, Co. Treas., 142 Okla. 19, 285 Pac. 38, this court had under consideration the provisions of that act, and held:

"The city levy for current expenses is limited by section 9692, C. O. S. 1921, to not more than 6 mills, unless an additional levy is authorized at an election held as

provided under sections 9707-9712, inclusive, C. O. S. 1921, or unless an additional levy is authorized at an election held as provided under chapter 61, S. L. 1923-24.

"Chapter 61, S. L. 1923-24, is an act 'providing for the correction of the tax rolls in certain cases,' and applies to only those cases designated by the act itself and as provided in section 1 thereof.

"Where a city seeks a levy for current expenses in excess of 6 mills, an election may be held under the provisions of chapter 61, S. L. 1923-24, where the conditions provided by that act exist, and where those conditions do not exist, such an election may be held only under the provisions of sections 9707-9712, inclusive, C. O. S. 1921."

An examination of chapter 61, supra, discloses that it is "An act providing for the correction of the tax rolls in certain cases * * *" and that it applies by its terms to those cases and to those cases only where "In any county in this state, where a court of competent jurisdiction has held that section 9692, Comp. Stat. 1921, has been violated by attempting to levy for general city purposes for the fiscal year 1923-24 a tax in excess of 6 mills upon each dollar of taxable property subject to ad valorem tax in such city for the said year 1923-24, such tax having been spread of record upon the tax rolls of such county." In the case under consideration the tax involved is for the fiscal year 1926-27. Chapter 61, supra, being limited to taxes levied for the fiscal year 1923-24, can have no possible application to taxes levied for the fiscal year 1926-27. That act was adopted by the Legislature to correct errors that occurred during the fiscal year 1923-24, and we again say that it "applies to only those cases designated by the act itself and as provided in section 1 thereof."

If the additional rate of levy was ever authorized, it must have been by virtue of an election held under the provisions of sections 9707, and 9711, C. O. S. 1921. Section 9707, supra, provides that if any estimate, certified to the excise board for the current expenses of any county, city, incorporated town, township, or school district, shall exceed the limits prescribed by the statute, and the excise board shall be of the opinion that such excess is reasonably necessary for the current expenses of the municipality for which the same is prepared, the excise board shall enter such fact upon the record of its proceedings and shall give notice by publication in one issue of some newspaper printed in the county that a special election will be held in the coun-

ty, city, incorporated town, township, or school district, as the case may be, on the second Tuesday after the first Monday in August next thereafter for the purpose of submitting to the qualified electors of such county, city, incorporated town, township, or school district, the question of making such increased levy, the election to be held under the general election laws of the state.

Section 9711, supra, provides that in cities the election shall be called by the mayor and council in such city, or the officers exercising like power in cities having a charter form of government, who shall canvass the returns thereof and make the levies and certify the same to the county clerk, who shall extend the same upon the tax rolls.

It is contended by the protestee that, since the mayor and city council are to call the election, the election shall be held under the provisions of section 4392, C. O. S. 1921, authorizing the calling of an election for certain purposes, and that the procedure to be followed is set out in that section. We cannot agree with that contention, for the reason that, under the plain terms of the statute, the election shall be held under the general election laws of the state and the canvass of the returns shall be made by the mayor and the council, or the officers exercising like power in cities having a charter form of government. The procedure provided by section 4392, supra, is directly in conflict therewith.

Sections 9707 and 9711, supra, must be considered together. When so considered, we find that if any estimate, certified to the excise board for the current expenses of any city, shall exceed the limits prescribed by the statute, and the excise board shall be of the opinion that such excess is reasonably necessary for the current expenses of the city, it shall enter such fact upon the record of its proceedings. The mayor and council of the city, or the officers exercising like power in cities having a charter form of government, shall thereupon call an election and give notice by publication in one issue of some newspaper printed in the county that a special election will be held in the city on the second Tuesday after the first Monday in August next thereafter for the purpose of submitting to the qualified electors of such city the question of making such increased levy. The election shall be held under the general election laws of the state and the returns thereof shall be canvassed by the mayor and council of the city, or the officers exercising like power in cities having a charter form of govern-

ment, and they shall make the levies and certify the same to the county clerk, who shall extend the same upon the tax rolls. That procedure is clear, distinct, and easy to follow.

In this case the county excise board resolved that it was of the opinion that an excess levy of 1 mill was necessary for the current expenses of the city. That resolution was entered upon the record of its proceedings. The county excise board made no other finding and adopted no other resolution with reference to the increase in the rate of levy.

The maximum rate of levy that could have been legally made for current expense purposes for the fiscal year in question for the city of Oklahoma City, under the finding, resolution, and record of the county excise board, was 7 mills, even though the statutory provisions relating to the subsequent procedure necessary for an increase in the rate of the levy had been followed. The library fund at that time was a part of the current expense. Missouri, K. & T. Ry. Co. v. Bennett, Co. Treas., 122 Okla. 102, 250 Pac. 1021. The total rate of levy for current expense purposes fixed by the county excise board was 7.39 mills.

The .39 mill was void for the reason that the county excise board found and determined that an excess levy of only 1 mill was necessary. It never at any time made a finding that an additional levy of 1.39 mills was necessary.

A finding by the county excise board in conformity with the provisions of section 9707, supra, is a condition precedent to the calling of an election for the purpose of submitting to the qualified electors of the city the question of making an increased levy. The excise board is the paramount authority as to all taxation matters. Ryan v. Roach Drug Co., 113 Okla. 130, 239 Pac. 912. Where the statute requires a series of acts to be performed before the owners of the property are properly chargeable with the tax, such acts are conditions precedent to the exercise of the power to levy the tax, and all the requirements of the statute must be complied with or that tax cannot be collected. Prince v. St. L. & S. F. Ry. Co., 110 Okla. 141, 237 Pac. 106.

Since the county excise board never found and determined that it was necessary that there be an additional levy of 1.39 mills, and since the question of making an increased levy of 1.39 mills was never submitted to the qualified electors of the coun-

ty as provided by sections 9707 and 9711, supra, the rate of levy was excessive, illegal, and void to the extent of .39 mills.

That leaves for consideration the question of whether or not an increase of 1 mill was authorized by the qualified electors of the city. As we have heretofore stated, the finding and determination by the excise board of the reasonable necessity for an increased levy of 1 mill was valid, and the board of commissioners of the city of Oklahoma City was authorized to call an election and to give notice by publication in one issue of some newspaper printed in the county that a special election would be held for the purpose of submitting to the qualified electors of the city the question of making the increased levy of 1 mill. The record shows that the board of commissioners of the city of Oklahoma City thereafter adopted a resolution authorizing the mayor to issue a proclamation calling an election to be held on the 3rd day of August, 1926, for the purpose of submitting to the qualified electors of the city of Oklahoma City the following question: "Shall the city of Oklahoma City and the excise board of Oklahoma county be empowered to authorize and levy a tax of one mill upon the dollar upon all taxable property within the limits of said municipality for additional current expenses of said city, in excess of the six-mill limitation now provided for by section 9692, Compiled Laws of 1921"; that thereafter an election proclamation in conformity to that resolution and to the resolution of the excise board was issued calling an election therefor and fixing the date thereof as the 3rd day of August, 1926; that the ballot used at that election was in substantial conformity with the resolution of the excise board, the resolution of the board of commissioners of the city and the proclamation of the mayor; and that, at that election, a majority of the qualified electors voting at the election voted in favor of the proposition. The result of that election was to authorize an additional levy of 1 mill for current expense purposes, making the total maximum legal levy for current expense purposes 7 mills, if an additional levy could be authorized by the excise board and the qualified voters of the city for current expense purposes under the facts shown by this record.

The record shows that the resolution of the board of commissioners of the city of Oklahoma City calling the election read, in part, as follows:

"Whereas, the opening of Walker street

is of vital importance to the proper development of the city of Oklahoma City; and

"Whereas, it is right and just that the city as a whole should bear its proportionate part of said improvement; and

"Whereas, the property owners abutting upon the proposed improvement, to wit, the opening of Walker street, have agreed to raise one-half of the cost of said improvement by public subscription; and

"Whereas, There is no money available in the current expense fund created by the six-mill levy as provided by law for the purpose of opening and widening Walker street. * * *"

It was stipulated and agreed in the record that the county excise board adopted the following:

"Motion was made by Mr. Wright, seconded by Mr. J. H. Berry, that we certify to the county assessor for the purpose of extending on the tax rolls for the benefit of Oklahoma City general current expense fund, 6.94 mills, the same to include special levy apportioned by special election for Walker street. Motion carried."

It was further stipulated and agreed that "included in the total appropriated needs for general current expense fund for Oklahoma City for the fiscal year beginning July 1, 1926, for which a levy of 6.94 mills was made, was an appropriation in the sum of $107,200 under the heading 'Permanent improvement upon Walker avenue. (* * *)'" In the parentheses just quoted, where the stars appear, the record showed "one-mill levy." The record, as found and determined by the court, showed "Permanent improvement upon Walker avenue (one-mill levy)". The certified valuation was $118,973,221. The $107,200 appropriated for permanent improvement upon Walker avenue is slightly less than the amount that would be produced by a 1-mill levy, the difference being approximately $1,000.

Statutes authorizing a levy of taxes are to be construed most strongly against the government and in favor of the citizens. Adams v. Board of County Commissioners, 35 Okla. 440, 130 Pac. 148.

The protestee contends that the appropriation of $107,200 under the heading, "Permanent improvement upon Walker avenue (one-mill levy)," was an item of current expense. In support thereof, protestee cites Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 Pac. 969, and quotes therefrom as follows:

" 'Current expenses,' as used in the statute, refers to the expenses which may be met out of any tax which is authorized by the Legislature to be levied for any one year within the constitutional limitation of section 9, art. 10, except section 9692 provides that annual installments on bond issues and judgments and interest thereon shall not be considered a part of the current expense. * * * Any tax authorized to he levied by the Legislature for any current fiscal year other than the taxes authorized by sections 10 and 27 are for current expenses and limited by the provisions of section 9692, supra, unless the Legislature has authorized an additional levy."

That statement is much broader than the facts in that case warranted, and the court in making the statement failed to give consideration to the decisions of this court in Lusk v. Botts, 64 Okla. 52, 166 Pac. 172, and in Lusk v. Eminhiser, 53 Okla. 785, 158 Pac. 915, which are to the contrary and neither of which was overruled either directly or impliedly. In the Botts Case this court held that a fund raised for tick eradication was not within the meaning of current expense, as used in section 9692, supra, and in the Eminhiser Case the same rule was applied to the township drag fund. Since that time this court has consistently followed the rule stated in the Eminhiser Case. The basis of the decision in the Eminhiser Case was that the township road drag fund was for the construction and maintenance of roads and highways throughout the state through the co-operation of the state and local highway authorities. That decision was under consideration by this court in the Ryan Case, upon which the protestee relies, and in St. L.-S. F. Ry. Co. v. McIntosh, 103 Okla. 246, 229 Pac. 1064, both the Botts Case and the Eminhiser Case were discussed. This court said:

"The act of the Legislature in each instance was dealing with a matter which was not of purely local interest or importance, but is clearly of a state-wide nature, and in our judgment has no application to the question now before the court for determination."

We refer to those decisions only for the purpose of showing that the statement made in the Ryan Case is not controlling as to the issue presented here.

The protestee says:

"It is to be borne in mind that the improvement of Walker street was not a matter of paving a street which was already in existence and open for traffic, but was for the purpose of acquiring certain property that might be used and dedicated for street purposes. It is not the acquisition of property for a public utility within the mean-

ing of section 27, art. 10 of the Constitution."

It is contended by the protestant that an increased levy could not be made for the purpose of opening and improving Walker street for the reason that the cost thereof would not be a current expense.

What we consider to be the controlling provision as to the payment of the cost of the opening of a street was incorporated in our statutes in the revision thereof and appeared as section 573, R. L. 1910. It now appears as section 4548, C. O. S. 1921. The pertinent portion thereof reads as follows:

"The council shall have power, in addition to the other powers granted by law, to open, straighten, widen, extend and otherwise improve streets, * * * within the city; and for opening, straightening, extending and widening streets, * * * the council shall provide for a tax to be levied at the same time and in the same manner as other city taxes. * * *"

Section 7376, R. L. 1910, was incorporated in our statutes with the adoption of that revision and was amended by the Session Laws of 1917, ch. 262, page 478, to reduce the maximum amount of the city levy for current expenses from 7 mills to 6 mills. That section, as amended, now appears as section 9692, C. O. S. 1921.

Since those sections were adopted at the same time by the revision known as the Revised Laws 1910, we are of the opinion that they must be construed together and that each must be given effect. When they are so construed, we find that cities are given the power to open and improve streets and to provide for a tax to be levied at the same time and in the same manner as other city taxes to procure a fund to defray the cost of the opening thereof. Had it been the intention of the Legislature to make the cost of opening a city street a part of the current expense of the city, there would have been no necessity for providing that the council shall provide for a tax. The inclusion of that provision in section 4548, supra, makes it clear that that expense is to be paid from the proceeds of a tax levied for that purpose and that it is not included in the current expense limited by section 9692, supra.

We are, therefore of the opinion that the opening of Walker street by the city was authorized by the provisions of section 4548, supra, and that the cost thereof should be paid from a fund derived from a tax levied for that purpose. The cost thereof was no part of the current expense of the

city and the inclusion thereof in the appropriation made for current expense purposes was without authority. The levy based thereon is void.

It will be noted that section 4548, supra, does not provide for a tax for the improving of streets. The council is given power to open, straighten, widen, extend, and otherwise improve streets. The fund derived from the tax to be levied is to be used for the opening, straightening, extending, and widening of streets. The improvement of streets is not included therein. The question then arises: How is the cost of improving the streets to be paid?

If the cost of improving streets was to be a part of the current expense of the city and was to be paid from a fund derived from a tax to be levied on the taxable property of the city, the Legislature would doubtless have so stated in this section. The fact that the Legislature therein provided for a tax to be levied, the proceeds thereof to be used for the opening, straightening, extending, and widening of streets, and did not provide that the proceeds thereof should be used for the improving of streets, shows a legislative intent that the improving of streets should not be from funds derived from the tax therein provided for.

Section 4550, C. O. S. 1921, provides that the council "may provide for making any and all improvements of a general nature in a city, including street intersections, which are hereby declared to be public utilities, and for the purpose of paying for the same, except as herein otherwise provided, may, from time to time, borrow money and issue negotiable bonds therefor; that no such money shall be borrowed or bonds issued until the city council shall be instructed so to do by three-fifths of the qualified property taxpaying voters of such city voting at any election held in such city, at which such proposition is submitted." That is authority for the issuance of bonds for the purpose of paying the cost of the improvement of streets. (We are not here determining that street intersections are public utilities).

Under the provisions of section 7, art. 10, of the Constitution, the Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby. Under that authority the Legislature has provided a comprehensive plan for the improving of streets and the payment of the cost thereof. Chapter 173, S. L. 1923. It

has provided that the cost thereof shall be assessed against the property benefited thereby, except that the governing body of the city is given the power in its discretion to provide for the payment of the cost of improving street intersections and alley crossings out of the general revenue. Section 22, chapter 173, supra.

It is said in 25 R. C. L. 981, quoted with approval by this court in St. L.-S. F. Ry. Co. v. McIntosh, supra, as follows:

"It is a general principle of interpretation that the mention of one thing implies the exclusion of another thing: expressio unius est exclusio alterius. The affirmative description of the cases in which the jurisdiction may be exercised implies a negative on the exercise of such power in other cases. The enumeration of certain powers in a statute relating to corporations implies the exclusion of all others not fairly incidental to those enumerated. Enumeration in a chapter of incorporation of the purposes for which the corporation may acquire title to real estate is necessarily exclusive of all other purposes. A statute directing a thing to be done by a specified officer or tribunal implies that it shall not be done by a different officer or tribunal. * * *"

This rule is stated in 36 Cyc. 1122, as follows:

"And where it directs the performance of certain things in a particular manner, it forbids by implication every other manner of performance."

Under that rule the enumeration of certain powers in a statute implies the exclusion of all others not fairly incidental to those enumerated.

Section 1 of chapter 173, supra, authorizes a city to "permanently improve" streets, "subject only to the limitations prescribed in this act." The act provides for the assessment of the cost of the improvement against the property benefited thereby, with the additional provision in section 22 thereof that the governing body, in its discretion, may provide for the payment of the cost for improving street intersections and alley crossings out of the general revenue. The granting, by the Legislature, of the power to provide for the payment of the cost of improving street intersections and alley crossings out of the general revenue implies the exclusion of authority to provide for the payment of the cost of improving the entire street out of the general revenue.

The granting, by the Legislature, of the power to open, straighten, widen, extend, and otherwise improve streets, and to provide for the payment of the cost of opening, straightening, extending, and widening streets from a fund to be derived from a tax to be levied at the same time and in the same manner as other city taxes, in the same section of the statutes, implies the exclusion of authority to provide for the payment of the cost of the improving of streets out of such a fund.

Under the street improvement act, as it existed prior to the adoption of chapter 173, supra, the cost of all intersections and 20 per cent. of the additional cost of other improvements therein provided for "* * * shall be paid for and assessed against the city wherein such work is done. and such city is hereby authorized to pay for such work and improvements out of its general fund. * * *" That provision is no longer in force, but its terms implied the exclusion of authority to provide for the payment of the cost of the improvement of streets out of the general fund, beyond the authority therein granted.

Those are legislative constructions against the contention of the protestee. Such a construction has been recognized by this court since the territorial decision in Hoffman v. County Commissioners. 3 Okla. 325, 41 Pac. 566, and has been applied in Foot v. Town of Watonga, 37 Okla. 43, 130 Pac. 597, and Glasco v. State Election Board, 121 Okla. 119, 248 Pac. 642. Certainly a Legislature would not grant authority for the payment of the cost of improving street intersections and alley crossings out of the general revenue if the entire street could be improved out of the general revenue.

Our attention is called to no provision of our statutes authorizing the improving of public streets as a part of the current expense, other than as hereinbefore referred to, and we know of no such authority. We, therefore, hold that a taxpayer may not have a tax burden imposed upon him or his property for the improving of a public street, other than as hereinbefore stated, which does not benefit property owned by him, as provided by section 7, art. 10 of the Constitution, without the approval of the qualified electors. The provision of the Constitution is not such an exclusive grant as to preclude the Legislature from authorizing a city to levy an annual tax for street improvements against all the taxable property of the city (Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559), and notwithstanding that provision the Legislature may authorize a city to provide for the payment of the cost of im-

proving the streets out of the general revenue. Oklahoma City v. Shields, supra. The Legislature has authorized cities to provide for the payment of the cost of street intersections and alley crossings (section 22, ch. 173, S. L. 1923), and it has provided for the repair and maintenance thereof in the same manner (section 33, ch. 173, S. L. 1923), but it has never authorized a city to pay the entire cost of the improving of streets in that manner.

The proposition submitted to the voters of Oklahoma City was:

"Shall the city of Oklahoma City and the excise board of Oklahoma county be empowered to authorize and levy a tax of one mill upon the dollar upon all taxable property within the limits of said municipality for additional current expenses of said city, in excess of the six-mill limitation now provided for by section 9692, Compiled Laws of 1921."

It made no reference to the improvement of any street. It cannot be said that the voters of the city authorized anything other than that contained in the proposition submitted to them. They authorized an additional tax levy for current expenses of the city under the provisions of section 9707, supra. They did not authorize an additional levy for street improvements. The excise board was without authority to make an appropriation for current expenses, including an item for "permanent improvement upon Walker avenue," and the tax levy based thereon is, to the extent of that appropriation, void.

If the city of Oklahoma City wants to improve a street, it can do so by assessing the cost thereof to the property benefited thereby, under the provisions of the Constitution and the improvement statutes, the cost of improving the street intersections and alley crossings to be paid from the general revenue, or it can do so when authorized by the voters as provided by section 4550, supra, but it cannot do so from the current expense of the municipality.

The Legislature may have thought that the paying of the cost of improving street intersections and alley crossings from the general revenue is sufficient tax burden and for that reason has failed to authorize the payment of the entire cost of street improvements from the general revenue.

The street improvement herein referred to is the character of improvement contemplated by section 7, art. 10, of the Constitution, and chapter 173, S. L. 1923. The improvement provided by chapter 173, supra, is defined in section 1 thereof to be permanent improvement. Under that provision a city is authorized to "permanently improve" a street. The improvement herein considered was "permanent improvement upon Walker avenue." Nothing herein said is intended to prohibit the use of the current expense fund of a city for street improvements other than permanent improvements.

The judgment of the trial court is therefore reversed, and the cause is remanded to the district court of Oklahoma county, with directions to enter judgment in favor of the protestant in conformity with his prayer to the amount of tax paid by him under the illegal levy of .39 mill and to the amount of tax paid by him under that portion of the 1-mill levy necessary to produce the sum of $107,200, and to make such other necessary orders as are not in conflict herewith.

MASON, C. J., LESTER, V. C. J., and RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur.

HUNT, J., absent. CLARK, J., dissents.