## CAMPBELL v. CORNISH et al.

No. 23562. Opinion Filed April 11, 1933.

Rehearing Denied May 16, 1933.

Hayes, Richardson, Shartel, Gilliland & Jordan, for plaintiffs.

C. W. King, R. H. Ledbetter. J. Berry King, Atty. Gen., and W. C. Lewis and F. M. Dudley, Assts. Atty. Gen., for defendants.

ANDREWS, J. This is an original proceeding in this court which was instituted for the purpose of procuring a judgment enjoining the defendants from enforcing an order of the Oklahoma Tax Commission, the portions of which, material to the issues herein, are as follows:

"That the basis for the registration and license of motor trucks as authorized by section 1, chapter 116, Oklahoma Session Laws 1927, shall be upon the 'carrying capacity' of such motor vehicles: that said motor vehicles are to be registered and licensed upon the 'carrying capacity' of each motor vehicle unit, whether composed of a single truck, or a truck or truck tractor with semi-trailer attached, in ·which event the combined carrying capacity of the entire

unit shall constitute the basis for registration and license.

'It is further ordered that the motor truck owner may exercise the option to declare the "carrying capacity' of his motor truck to be the factory rated carrying capacity, which shall be taken to be the prima facie carrying capacity of such motor truck, and upon such declaration the applicant shall be issued a license upon the factory rated basis. If, however, such applicant intends to engage in carrying loads greater than the factory rated carrying capacity on his motor truck, whether carried on motor truck, or upon motor truck, truck tractor and/or semi-trailer, he should declare the weight of the loads which he intends to engage in carrying, and include same in his application as the carrying capacity of his motor truck or truck tractor, upon which declared capacity license will be issued, such declared capacity to constitute the prima facie carrying capacity of such motor truck, truck tractor, and/or semi-trailer as established by such declaration of the owner."

A determination of the issues presented in this action requires an examination of the statutes with reference to the registration and licensing of motor trucks in Oklahoma. We will analyze such of the statutes pertaining to motor vehicles as we think pertain to the issues presented in this case.

Section 1, chapter 290, Session Laws 1919, section 10129, C. O. S. 1921, section 10268, O. S. 1931, requires every owner or custodian of a vehicle with motor attachment having value, whether in operation on the public highways of this state or in storage, except as therein otherwise expressly provided, to cause to be filed, by mail or otherwise, in the office of the Department of Highways or with its agent a verified application for registration on a blank, to be furnished by the said department for that purpose, containing a brief description of the motor vehicle to be registered, including the name of the manufacturer, the type and factory number of such vehicle, the character of the motor power, and the amount of such power stated in figures of horse power as advertised by the manufacturer, and the name of the county in which he resides. The section provided that the term "motor vehicle" should be construed to mean "any automobile, motorcycle, motor truck, motor vehicle, or traction engine." It also provided that no motor vehicle should be entitled to use the public highway unless such motor vehicle has attached thereto a tag as therein provided, and that any motor vehicle should be subject to seizure and detention unless it has attached thereto a tag as therein provided, with the exception of those instances where an application therefor has been made and the tag has not yet been issued.

Section 2 of the 1919 Act, supra, as amended by section 1, chapter 130, Session Laws 1925, section 10269, O. S. 1931, provides for the issuance and delivery to the owner of every motor vehicle of a certification of registration and one identification and number plate, "upon the filing of such application and the payment of the fee provided in this article" to the Department of Highways.

Section 3 of the 1919 Act, supra, as amended by section 1, chapter 167, Session Laws 1925, and by section 1, chapter 116, Session Laws 1927, section 10271, O. S. 1931, fixes the amount of license fees to be paid annually upon the registration of automobiles, motorcycles, and motor trucks. It provides that the basis for the determination of the amount of license fees on automobiles and motorcycles shall be the "manufacturer's list price" and it provides that the basis for the determination of the amount of license fees on motor trucks shall be the "pounds carrying capacity." It provides that motor trucks shall be classified according to the "pounds carrying capacity" thereof for license purposes, one of the classes being motor trucks of 1,500 pounds carrying capacity or less, another being motor trucks in excess of 1,500 pounds and not exceeding 2,000 pounds carrying capacity, another being motor trucks in excess of 2,000 pounds and not exceeding 3,000 pounds carrying capacity, another being motor trucks in excess of 3,000 pounds and not in excess of 4,000 pounds carrying capacity, another being motor trucks in excess of 4,000 pounds and not in excess of 6,000 pounds carrying capacity, another being motor trucks in excess of 6,000 pounds and not exceeding 8,000 pounds carrying capacity, and another being motor trucks in excess of 8,000 pounds carrying capacity.

It was therein provided that the license tax is to be computed on the manufacturer's list price of the 1924 models of automobiles, motorcycles, and motor trucks "now in use" and that, if the make or type of the motor vehicle has been discontinued prior to 1924, the license fee is to be based on the last list price published by the manufacturer for such make or model of motor vehicle, and on a new automobile, motorcycle, and motor truck the list price as quoted at the beginning of the quarterly period when such license is applied for. From an examination of the entire act it is evident, and we hold, that that provision is erroneous in so far as it applies to motor trucks. The

error was evidently due to the carrying forward of language used in the prior acts wherein the manufacturer's list price was the determining factor, not only as to automobiles and motorcycles, but as to motor trucks. The determining factor, under the existing law, as to motor trucks is the "pounds carrying capacity" as classified therein.

The section provides for a reduction in the amount of the license fee of 20 per cent. each year for three years, the reduction to be based "on registration in this or any other state with a minimum license fee of $8 per year."

The section provides for a classification of new vehicles and second-hand or used vehicles brought into the state after January 1st. It classifies them into four classes, one between January 1st and March 31st, one between April 1st and June 30th, one between July 1st and September 30th, and one between October 1st and December 31st. For the first classification the full amount of the annual fee is required to be paid; for the second classification three-fourths of the amount of the annual fee is required to be paid; for the third classification one-half of the amount of the annual fee is required to be paid, and for the fourth classification one-fourth of the amount of the annual fee is required to be paid. That provision is important in a discussion of the issue presented, for the reason that second hand or used vehicles brought into the state after January 1st are classified with new vehicles purchased after January 1st, and the same percentage of the annual fee is required to be paid on them as is required to be paid on new vehicles, notwithstanding the fact that three successive reductions of 20 per cent. each in the amount of the annual fee are authorized on vehicles registered in this or any other state during prior years.

The section provides that if application is not made before March 1st of each year the owner or operator of the vehicle is liable to prosecution as provided for by law.

The penal provisions are section 1, chapter 76, Session Laws 1923-24, section 10272, O. S. 1931, providing a penalty of ten cents per day to be added to the license fee; section 2, chapter 76, Session Laws 1923-24, section 10273, O. S. 1931, making it the duty of the sheriff to seize motor driven vehicles not bearing or displaying a current year license tag; section 3, chapter 76, Session Laws 1923-24, section 10274, O. S. 1931, requiring the sheriff to take possession of motor driven vehicles and to sell the same in the event the owner shall refuse to pay the delin-

quent taxes and penalties provided by the act, and section 7, chapter 290, Session Laws 1919, as amended by section 1, chapter 102, Session Laws 1921, section 10135, C. O. S. 1921, section 10279, O. S. 1931, providing that any person, firm, association, or corporation failing to comply with the provisions of the act shall be deemed guilty of a misdemeanor and be subject to a fine of not less than $25 and not more than $100.

From an examination of those statutes we must conclude that the order of the Oklahoma Tax Commission, supra, is legislative in character.

That order is legislative in character in that it purports to provide that the combined carrying capacity of a motor truck and an attached semi-trailer shall constitute the basis for the determination of the carrying capacity of the motor truck for registration and licensing purposes, when the statutes contain no such provision. The statutes relate to the carrying capacity of trucks, and not to the combined carrying capacity of trucks and other vehicles attached thereto. The amount of the fee to be collected for the registration and licensing of a motor truck, under the statute, is dependent upon the legislative classification of motor trucks to which that motor truck belongs. The legislative classification is based on "pounds carrying capacity" of the motor truck for which application is made. While the Legislature doubtlessly may make a classification of motor trucks for registration and licensing purposes based on the combined carrying capacity of a motor truck and any vehicle attached thereto, it has not not done so. We know of no law authorizing the Oklahoma Tax Commission to provide for any such classification of motor trucks for registration and licensing purposes.

We, therefore, hold that the Oklahoma Tax Commission is without authority of law to provide for a classification of motor trucks for registration and licensing purposes different from the classification thereof provided by the Legislature, and that that portion of the order complained of is without authority of law and is void.

The order complained of is legislative in character in that it provides that a motor truck owner, who intends to engage in carrying loads greater than the factory rated carrying capacity of his motor truck, may declare the weight of the loads, which he intends to engage in carrying, in his application for registration and license, and procure the registration and licensing thereof by the payment of a fee based on the

carrying capacity thereof declared by him in his application, when the statutes contain no such provision. The statutes provide that motor trucks may be registered and licensed only upon payment of the fees required by the statute. The fee required by the statute for the registration and licensing of a truck is based on the carrying capacity of the truck, and not on the "declared" carrying capacity of the truck. Neither the owner, the Oklahoma Tax Commission, nor the State Highway Commission is given any discretion to "declare" the carrying capacity of a motor truck. They have no discretion in the matter. The statute is mandatory. The carrying capacity of the truck, and not any capacity thereof "declared" by anyone, is controlling. There is no authority of law to register and license a motor truck on the basis of its "prima facie carrying capacity" or on its "declared capacity." We know of no law authorizing the Oklahoma Tax Commission to provide a basis for the computation of fees for registration and licensing of motor trucks which is different from the basis provided by the Legislature.

We, therefore, hold that the Oklahoma Tax Commission is without authority of law to provide for the registration and licensing of motor trucks on any different basis than that provided by the Legislature and that that portion of the order complained of is without authority of law and is void.

We are next confronted with the principal question presented herein, which is: What is the meaning of the term "pounds carrying capacity," as used by the Legislature in providing the amount of fees to be paid for the registration and licensing of motor trucks?

To some extent, at least, the meaning of the term depends on the meaning of the words composing the term. Section 3528, C. O. S. 1921 (section 24, O. S. 1931), provides a rule for the determination of the meaning of those words, as follows:

"Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears. * * *"

Another applicable rule is that the legislative intention must be ascertained from a consideration of all of the statutory provisions having relation to the subject-matter. Taylor v. Brown, Co. Treas., et al., 145 Okla. 18, 291 P. 10; Avery et al. v. Interstate Groc. Co. et al., 118 Okla. 268, 248 P. 340; Board of Co. Com'rs v. Ryan, Co. Treas., 107 Okla. 278, 232 P. 834, and De Graffenreid et al. v. Iowa Land & Trust Co., 20 Okla. 687, 95 P. 624.

Under those rules the meaning of the word "pounds" must be construed to be "weight." It clearly appears that it does not have a more limited meaning, for it appears in the statute providing for the classification of motor trucks into classes consisting of motor trucks having a carrying capacity of 1,500 pounds or less, motor trucks having a carrying capacity in excess of 1,500 pounds and not exceeding 2,000 pounds, motor trucks having a carrying capacity in excess of 2,000 pounds and not exceeding 3,000 pounds, etc. Doubtlessly it was used in connection with the specific weights provided in the statute for the purpose of defining the character of the capacity therein referred to to be weight capacity and not volume or other capacity.

We, therefore, hold that the word "pounds," as used in the statute, pertaining to the classification of motor trucks for registration and licensing purposes according to their "pounds carrying capacity," was intended to and does define the character of the capacity therein referred to to be weight capacity and not volume or other capacity.

Under the rule stated, the meaning of the word "carrying" must be construed to be, as defined in Webster's International Dictionary, "the act or business of transporting from one place to another." Doubtlessly it was used in connection with the specific weights provided in the statute for the purpose of further defining the character of the capacity therein referred to to be, not only capacity to sustain weight, but capacity to transport weight by a power contained within itself. The capacity of a motor truck to sustain weight is one thing, and the capacity of a motor truck to "carry" weight is another, for in carrying weight it must do more than sustain weight. A motor truck may have a capacity to sustain a greater weight than it has the capacity to carry by reason of its lack of power from within itself to carry the weight from one place to another. Such is a matter of common observation. Its capacity to carry is dependent not only on the mechanical construction of what is commonly known as the chassis, but upon the mechanical construction and consequent power of the motor and the transmission, and upon the gear ratio between the motor power and the chassis. As stated in terms of common parlance, a motor truck ordinarily will carry more weight when it is being operated in low gear.

We, therefore, hold that the word "carrying," as used in the statute pertaining to the classification of motor trucks for registration and licensing purposes accord-

ing to their "pounds carrying capacity," was intended to and does define the character of the capacity therein referred to be the capacity to sustain and transport weight from one place to another by a power from within itself.

In 9 Corpus Juris, page 1275, the word "capacity" is said to be a word having many meanings, but defined generally as size, space, or compass, strength, power, or force. An examination of many of the decisions wherein the word is defined discloses that its meaning is dependent entirely on its relationship to the subject-matter under consideration when it is used. The word, as used by the Legislature in the term under consideration, evidently means the strength to sustain weight together with the power to transport the sustained weight from one place to another.

We, therefore, hold that the word "capacity," as used in the statute pertaining to the classification of motor trucks for registration and licensing purposes according to their "pounds carrying capacity," was intended to and does mean the strength to sustain weight together with the power to transport the sustained weight from one place to another.

What then is the meaning of the term "pounds carrying capacity"? The defendants contend that it means the largest amount of weight that may be sustained and transported by a motor truck. However, it appears that they do not attempt to apply that definition where the pounds carrying capacity under that definition is less than the capacity as rated by the factory manufacturing the truck, and that they insist that the pounds carrying capacity, in all instances, is at least equal to the capacity of the truck as rated by the factory manufacturing the truck. It also appears that they do not apply their definition where the weight of the load actually carried on the truck is less than the actual carrying capacity of the truck, if a fee has been paid which is based on the weight of the load which is being carried on the truck, which weight is in excess of the manufacturer's rated carrying capacity of the truck. In other words, they require the payment of a fee based on an amount not less than the amount of the manufacturer's rated capacity, though the actual carrying capacity is less than the amount of the manufacturer's rated carrying capacity, and they require the payment of a fee based on the amount actually carried on a truck in excess of the manufacturer's rated carrying capacity, but where a fee has been paid on that basis, they do not require a fee to be paid on the additional actual carrying capacity of a truck. Thereby they recognize the fact that the amount of weight actually carried is not the determining factor. They are correct in that construction of the statute.

Neither the weight to be carried on a motor truck nor the weight actually carried on a motor truck is a factor in the determination of the amount of fee to be paid for the registration and licensing of a motor truck, the amount of that fee being based on the capacity of the motor truck to carry weight.

If the defendants are correct in their definition of the term, they are in error in failing or refusing to require the payment of a fee based on the actual capacity of the motor truck to carry weight from one place to another. They have no more authority of law to collect a fee based on a lesser rate than is provided by the statute than they have to collect a fee based on a rate which is in excess of that provided by the statute.

If the actual pounds carrying capacity is the factor in determining the rate to be charged for the registration and licensing of motor trucks, the Legislature has imposed a burden that will require the employment of many men, the performance of much labor, and the evolution of a system for ascertaining the actual pounds carrying capacity of each motor truck in the state. It has authorized no public official to determine the actual carrying capacity of a motor truck. It has provided no scheme or system by which such a determination may be made. It has not provided an agency to make such a determination.

If the actual carrying capacity of a motor truck is the determining factor, is that capacity to be determined while it is being operated in low gear, or otherwise? Is it to be determined when the motor truck is being operated on a paved road, or elsewhere? Is it to be determined when the motor truck is being operated on a level road or on a hill, on a hard road or in the sand, when highpowered gasoline or low grade gasoline is being used, when superior motor oil or inferior motor oil is being used, when the motor is in good mechanical condition, or otherwise? The Legislature has made no provision with reference thereto.

We submit the following case: Two men live on adjoining farms. At the same time they each buy from the same dealer a truck of the same make, type, and factory rated carrying capacity. The trucks are identical in so far as two trucks may be identical.

"A" lives at the top of a hill. The road to his market is completely paved. It is down grade all of the way. He uses the best of lubricating oil and highpowered gasoline. He keeps his truck in good mechanical condition and properly lubricated. His neighbor "B" lives at the foot of a hill. The road to his market is unpaved, rough, and sandy. He must ascend that hill in going to his market. He uses an inferior grade of lubricating oil and gasoline. He does not keep his truck properly lubricated. He permits the motor to remain in an improper mechanical condition. Each of these men applies to the Oklahoma Tax Commission for a license for his truck. The statutes require the Oklahoma Tax Commission to collect license fees based on the pounds carrying capacities. How is the Oklahoma Tax Commission to determine actual pounds carrying capacity?

Evidently the actual pounds carrying capacity of the two trucks is not the same. The quality of the gasoline and lubricating oil used, the condition of the motor, the presence or absence of pavement, the presence or absence of a hill, and many other factors operate to cause one truck to have a different actual pounds carrying capacity from another.

If the State Highway Commission or the Oklahoma Tax Commission is to make a test of each truck in this state to determine how many pounds that truck can carry before it issues a license therefor, the result will be that the license fee for different trucks of the same make, type, and rated carrying capacity will be different.

How can the defendants determine the actual pounds carrying capacity of a motor truck? They may make their test only by the continued addition of weight until the weight is such that the truck can no longer carry the load. With any less weight the actual pounds carrying capacity of a truck has not been reached. For instance, they attempt to determine the actual pounds carrying capacity of a motor truck. They find that the truck can carry 1,400 pounds. Then they add another hundred pounds and they find that it can carry 1,500 pounds, although the additional weight materially affects the speed and causes the motor to labor. Then in order to get the difference between a $15 fee and a $25 fee they add another pound making a load of 1,501 pounds, and they find that the addition of the additional pound does not break down the chassis of the truck and does not completely stop the motor. And so they may find that it has a carrying capacity of 1,501 pounds and that it comes within the classification in excess of 1,500 pounds and not exceeding 2,000 pounds. It must be apparent that the Legislature did not intend to provide that the fees for the registration and licensing of motor trucks were to be determined by any such methods.

If there is any doubt thereof, it is settled by the other statutory provisions. One of those is the statute providing for a reduction in the rate of fee to be charged of 20 per cent, each year over a period of three years. That provision must be given effect. It cannot be said that the Legislature recognized that an older truck would have a lesser pounds carrying capacity if the actual pounds carrying capacity was to be the determining factor. The Legislature has refused to apply such a principle, for it has required a license on a second-hand or used truck brought into the state after January 1st to be taxed on the same basis as a new truck which is brought into the state after January 1st.

Under the statute the license fee is required to be paid before the truck is operated and, under the statute, if the proper fee has not been paid, the operator of the truck has violated this provision of the statute. Evidently the Legislature did not intend that the question of whether or not the owner of a truck is violating the penal provisions of the act should be dependent upon whether or not the actual pounds carrying capacity of the motor truck is in excess of the pounds carrying capacity used in computing the rate paid for the registration and licensing of the truck.

The plaintiffs contend that the term in question means the manufacturer's rated carrying capacity and not the actual carrying capacity of the truck.

In addition to the rules of statutory construction hereinbefore referred to, we must keep in mind other rules of statutory construction. Among those is the rule that, where the literal meaning of a statute would result in great inconvenience, or lead to absurd consequences which the Legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which shall promote the ends of justice and void the absurdity. Protest of Chicago, R. I. & P. Ry. Co., 137 Okla. 186, 279 P. 319. Another such rule is that every statute should have a reasonable, sensible construction in preference to one which renders it, or a substantial part of it, useless or deleterious. Board of Education v. Woodworth et al., 89 Okla. 192, 214 P. 1077, and Chicago, R. I. & P. Ry. Co. v. State et al.,

90 Okla. 173, 217 P. 147. Another such rule, and one which the defendants apparently have overlooked, is the rule that statutes requiring or authorizing a levy of taxes or duties are to be construed most strongly against the government and in favor of its citizens, and where a statute imposing a tax is susceptible of two constructions, if the legislative intention is in doubt, the doubt as a rule should be resolved in favor of the taxpayer. Board of Com'rs v. Ryan, Co. Treas., 107 Okla. 278, 232 P. 834; Magnolia Petroleum Co. v. Sappington, Co. Treas., et al., 124 Okla. 16, 253 P. 483; Stone v. Bonaparte, Co. Treas., 148 Okla. 70, 297 P. 228; McGannon, Adm'x, v. State ex rel. Trapp et al., 33 Okla. 145, 124 P. 1063; Adams v. Board of Com'rs. et al., 35 Okla. 440, 130 P. 148; St. L.-S. F. Ry. Co. v. McIntosh, Co. Treas., 103 Okla. 246, 229 P. 1064; St. L.-S. L. Ry. Co. v. Sanders, Co. Treas., 154 Okla. 159, 7 P. (2d) 161; 26 Am. & Eng. Cyc. of Law (2d Ed.) 669; Lewis & Sutherland. Statutory Construction (2d Ed.) section 535; and 59 Corpus Juris, section 670, page 1131. In 59 Corpus Juris, page 1131, the rule is stated with hundreds of citations in support thereof. Such is the rule in this state as established by the authorities hereinbefore cited.

It does not appear to be necessary to call attention to the fact that there is some doubt as to the meaning of the statute. The record so shows. It shows that for many years the collecting officials of the state used the factory rated capacity as a basis for determining the amount of the fee to be paid for the registration and licensing of motor trucks and that only within the past few years have they made the contention that is being made by the defendants in this action. Under the rule stated, we could well hold that the doubt must be resolved in favor of the plaintiffs, but it is not necessary for this court to base its decision on that rule alone. There is another rule of equal importance, which is that a statute should be given a construction in conformity with the Constitution in order that its constitutionality may be sustained, if the statute is susceptible of such a construction.

In Connally, Com'r, et al. v. General Const. Co., 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322, the Supreme Court of the United States laid down a rule that must be given consideration, as follows:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

In support thereof it cited International Harvester Co. v. Kentucky, 234 U. S. 216, 221, 34 S. Ct. 853, 58 L. Ed. 1284; Collins v. Kentucky, 234 U. S. 634, 638, 34 S. Ct. 924, 58 L. Ed. 1510. The terms of the statute under consideration create a new offense. It requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. The Supreme Court of the United States in Connally, Com'r, et al. v. General Const. Co., supra, said:

"The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others, declared invalid. The precise point of differentiation in some instances is not easy of statement; but it will be enough for present purposes to say generally that the decisions of the court, upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them. Hygrade Provision Co. v. Sherman, 266 U. S. 497, 502, 45 S. Ct. 141, 69 L. Ed. 402; Omaechevarria v. Idaho, 246 U. S. 343, 348, 38 S. Ct. 323, 62 L. Ed. 763, or a well settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, Nash v. United States, 229 U. S. 373, 376, 33 S. Ct. 780, 57 L. Ed. 1232; International Harvester Co. v. Kentucky, supra, at page 223 (34 S. Ct. 853), or, as broadly stated by Mr. Chief Justice White, in United States v. Cohen Grocery Co., 255, U. S. 81, 92, 41 S. Ct. 298, 301 65 L. Ed. 516, 14 A. L. R. 1045, 'that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.' See also. Waters-Pierce Oil Co. v. Texas (No. 1), 212 U. S. 86, 108, 29 S. Ct. 220, 53 L. Ed. 417. Illustrative cases on the other hand are International Harvester Co. v. Kentucky, supra, Collins v. Kentucky, supra, and United States v. Cohen Grocery Co., supra, and cases there cited."

Under that rule the statute in question must fail unless we hold that the words employed have such a technical or other special meaning as permit a correct application of them. Such is the effect of the decision of the Supreme Court of the United States in Champlin Refining Co. v. Corporation Com-

mission et al., 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062. Therein that court said:

"And the ascertainment of the facts necessary for the application of the rule of proportionate production laid down in section 4, would require regular gauging of all producing wells in each field; a work far beyond anything that reasonably may be required of a producer in order to determine whether in the operation of his wells he is committing an offense against the act."

Paraphrasing that language and applying it to the facts shown by the record in this case, under the statute involved in this action, the ascertainment of the facts necessary for the determination of the amount of license fee to be collected from applicants for licenses for trucks, under the theory of the defendants, would require a determination of the maximum pounds carrying capacity of each truck prior to the issuance of the license therefor, a thing for which no legislative provision has been made, and a thing far beyond anything that reasonably may be required of the owner of a truck in order that he may determine whether or not he is committing an offense under the act.

While those decisions relate to penal provisions of statutes, they are applicable herein, for there is a penal provision in this statute which must be considered together with the other provisions of the legislative enactment in determining the meaning thereof. The penal provisions of the act appear to be necessary for the enforcement thereof. We prefer to give the act a construction by which each of the provisions thereof may be sustained.

It is contended that, by the operation of overloaded trucks, public highways are being injured. While that is no doubt true, there is probably no way by which the state can provide for the collection of license fees sufficient to reimburse the state for damage sustained to its highways. Certainly the maximum fee provided by the Legislature of $300 is wholly inadequate for such a purpose. The provision of the statute fixing the maximum fee for a license at $300 applies to trucks with pounds carrying capacity in excess of 8,000, and there is no maximum weight provided. In other words, for a fee of $300 the owner of a truck may procure a license to operate a truck carrying any weight in excess of 8,000 pounds. In excess of 8,000 pounds means 16,000 pounds, or any other amount in excess thereof. An examination of this revenue law discloses no intention on the part of the Legislature to therein provide any safeguard against injury to the highways. If the Legis-

lature had had any such intention, it certainly would not have authorized the carrying of loads in excess of 8,000 pounds for an annual fee of $300, for one trip with such a load across the state over a dirt road may cause more than $300 to be expended in the repair of that road. A highway may be injured as much by the hauling of equal weight on vehicles hauled by horses, yet no license fees have been required for such a method of transportation. If injury to highways is to be the determining factor, in the absence of a legislative enactment to that effect, caterpillar trucks and trucks of more than four weight bearing points of contact with the highway ought to be given a lesser rate of fee, for certainly they do less damage to highways than truck of four point contact.

The evidence shows that all trucks purchased from a manufacturer have a factory rated carrying capacity and that that condition existed at the time of the enactment of the legislative provision in question. That that factory rated carrying capacity is not subject to the control of the taxing officials of the state is no reason for denying the contention of the plaintiffs, for the manufacturer's list price of automobiles is also beyond the control of the taxing officials of the state, and the manufacturer's list price was used by the Legislature as a basis of classification of automobiles for registration and licensing purposes. It is evident that the Legislature sought for some fixed arbitrary standards which might be used as a basis for the classification of motor vehicles in determining the amount of fees to be paid for the registration and licensing thereof. With reference to automobiles and motorcycles 't selected the manufacturer's list price and used that term in the act. It provided for licenses fees on automobiles or motorcycles based on "the manufacturer's list price." In the same section with reference to motor trucks it provided for fees thereon to be based on the "pounds carrying capacity." The provisions of section 3, article 4, chapter 173 Session Laws 1915, provided a basis for the computation of fees on all motor vehicles on the "A. L. and A. M. rating," a term not defined by the act, and with no method of determining the horse power of the motor vehicle. The 1919 Act, supra, provided that the owner of the vehicle should state in his application "the amount of such power as stated in figures of horse power as advertised by the manufacturer," and in that same act we find "the manufacturer's list price" used in connection with motor trucks for registration purposes. It is evident that the term was used with its technical and

special meaning, to wit, the manufacturer's rated carrying capacity.

That the pounds carrying capacity of a truck may be increased by reconstructing the supporting parts thereof is a matter for legislative consideration and not one for judicial cognizance.

While section 12, article 10, of the Constitution, authorizes the imposition of such a tax, there is no provision of the Constitution which requires the imposition thereof, There is no legislative provision requiring the collection of a fee for registration and licensing of motor trucks other than the one under consideration. It was held in Avery et al. v. Interstate Groc. Co. et al., supra:

"The authority to impose license tax upon motor vehicles must be found in the Constitution and statutes, whether predicated upon the taxing power or upon the police power of the state."

If the Legislature desires to provide for a license fee based on the actual carrying capacity of a motor truck, it may do so, but it has not done so. The fact that the carrying capacity thereof may be increased by reconstructing the parts thereof and that the carrying capacity has been increased by the improvement of roads and otherwise, does not operate to change the law which has been enacted by the Legislature.

We have carefully considered Broadway Express, Inc., v. Murray, 60 Fed. (2d) 293. Grolbert v. Oklahoma Tax Commission, 60 Fed. (2d) 301, and the other decisions cited by the defendants. We find nothing therein which we consider to be sufficient to sustain the contention of the defendants or to require a conclusion different from that reached by this court, although in the federal cases cited it was held that the Oklahoma Tax Commission did not exceed its authority in fixing the license fees for trucks operating in interstate commerce upon the maximum load of the trucks rather than upon their factory rated carrying capacity. The issue presented here was not the principal question presented and decided in those cases. We think that the rule stated in State Tax Commission et al. v. Safety Transfer & Storage et al. (Ky.) 18 S. W. (2d) 991, is a better rule under the facts shown by the record in this case. We quote that decision as follows:

"Beginning in the year 1918 the license tax on motor trucks was based on carrying capacity, the precise language of the act being: 'Those having a capacity of.' Acts 1918, c. 27. In 1920, the license on motor trucks was raised, but the basis remained the same, the language of the act being:

'Having capacity of.' Acts 1920, c. 90. In 1924, the tax was again raised without changing the basis, the statute again employing the words, 'having a capacity of.' Acts 1924, c. 79. In 1926, there was another raise, but the basis still remained the same, the language being: 'Having a capacity of.' Acts 1926, c. 111. Under section 2 (b), c. 90, Acts 1920, the only data which the owner of the truck was required to give concerning its carrying capacity was the manufacturer's rating. Beginning with the year 1918 and continuing for several years, all licenses were issued in accordance with the manufacturer's rating. However, on December 4, 1928, the State Tax Commission issued to the county clerks an order requiring all trucks to be rerated for license purposes. The order applied to all trucks from 1½ tons to 8 tons capacity, except trucks manufactured prior to 1922, which were treated as obsolete. By this order each truck covered thereby was given a carrying capacity in excess of the manufacturer's rating. The increase thus made averaged almost 50 per cent.

"Taking the position that the State Tax Commission was without power to place this construction on the statutes, the Safety Transfer & Storage Company, and other truck owners acting on behalf of themselves and other truck owners similarly situated, brought this suit under the Declaratory Judgment Act (Acts 1922, c. 83) for an adjudication of their rights under the statute, and to require the members of the State Tax Commission and those acting for them to accept manufacturers' ratings, and to require the repayment of such excess licenses as were paid before the judgment became effective. On final hearing the Franklin circuit court sustained the position of plaintiffs and entered a judgment ordering the State Tax Commission to accept payment for licenses according to manufacturers' ratings. He further ordered a refund of the excess licenses theretofore paid. From that judgment this appeal is prosecuted.

"Appellants insist that the 'actual carrying capacity' should control, and not the capacity fixed by the manufacturers. Summarizing the evidence we find that trucks manufactured in 1928 and 1929 have no greater carrying capacity than the same make of trucks of the same rating manufactured in 1925. We further find that the manufacturers' ratings are substantially correct, but that trucks are often overloaded, and when overloaded they have a carrying capacity in excess of the manufacturers' ratings. Though this be true, we must have a standard of some kind to govern the action of the county clerks. Without such standard the question of capacity will vary with the personnel of the owner, the character of the business in which it is em-

ployed, and the kind of street or road over which it is operated. An increase of ratings based on the fact that some owners overload their trucks is manifest injustice to those who do not follow that practice. Every other guide being uncertain, the officials charged with the administration of the law adopted the practice of issuing licenses based on the manufacturers' ratings. This was continued for several years, when the order in question was promulgated. Here,tee then, we have a case where the language of the statute is clearly ambiguous. We have had a contemporaneous construction of the statutes through several administrations. Not only so, but the Legislature has met, and though it has made several increases in the license taxes, it has never changed the standard adopted by those charged with the administration of the law. Therefore, it seems to us, if there ever was a case where the doctrine of contemporaneous construction should be followed and applied, this is one. Fuqua v. Hager, 119 Ky. 407, 84 S. W. 325, 27 Ky. Law Rep. 46; City of Louisville v. Louisville School Board, 119 Ky. 574, 84 S. W. 729, 27 Ky. Law Rep. 209; Greene. Auditor, v. Jones et al., 170 Ky. 757, 186 S. W. 675. Unless we adhere to that doctrine, we shall have uncertainty and confusion that cannot fail to result in inequality of treatment in the administration of the statute.

"While the State Tax Commission is to be commended for its efforts to collect license taxes on actual carrying capacity, the ratings made by the manufacturers have been the standard so long that any change therein will have to be made by the Legislature.

"Judgment affirmed."

We, therefore, hold that the term "pounds carrying capacity," as used in the statute pertaining to the classification of motor trucks for registration and licensing purposes, was used by the Legislature with reference to a technical and special meaning, to wit, the manufacturer's rated carrying capacity thereof. It was a classification of property for taxation purposes, under the provisions of the Constitution, on an arbitrary basis.

We find nothing in the act that authorizes the collection of a license fee for trailers or semi-trailers. They are not within the provisions of the act.

The prayer of the plaintiffs is granted. The defendants are hereby prohibited from enforcing the order complained of, known as amended order No. 21 of the Oklahoma Tax Commission, and from collecting or attempting to collect fees for the registration and licensing of motor trucks at a greater amount than the amount of the fee prescribed by the Legislature, which is based on the manufacturer's rated carrying capacity thereof.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur. OSBORN, BUSBY, and WELCH, JJ., dissent.